IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. TERRI NIX, | ) |
| | ) |
| | ) |
| STATE OF CALIFORNIA<br>ex rel. TERRI NIX, | ) |
| | ) |
| | ) |
| STATE OF COLORADO<br>ex rel. TERRI NIX, | ) |
| | ) |
| | ) |
| STATE OF DELAWARE<br>ex rel. TERRI NIX, | ) |
| | ) |
| | ) |
| DISTRICT OF COLUMBIA<br>ex rel. TERRI NIX, | ) |
| | ) Civil Action No: |
| | ) 1:14-cv-1486-LMM |
| STATE OF FLORIDA | ) Jury Trial Demanded |
| ex rel. TERRI NIX, | ) FILED UNDER SEAL |
| | ) |
| STATE OF GEORGIA<br>ex rel. TERRI NIX, | ) |
| | ) |
| STATE OF ILLINOIS<br>ex rel. TERRI NIX, | ) |
| | ) |
| STATE OF INDIANA<br>ex rel. TERRI NIX, | ) |
| | ) |
| STATE OF IOWA<br>ex rel. TERRI NIX, | ) |
| | ) |
| STATE OF LOUISIANA<br>ex rel. TERRI NIX, | ) |
| | ) |

1

**STATE OF MARYLAND** )
**ex rel. TERRI NIX,** )
)
**STATE OF MINNESOTA** )
**ex rel. TERRI NIX,** )
)
**STATE OF NEVADA** )
**ex rel. TERRI NIX,** )
)
**STATE OF NEW JERSEY** )
**ex rel. TERRI NIX,** )
)
**STATE OF NEW MEXICO** )
**ex rel. TERRI NIX,** )
)
**STATE OF NORTH CAROLINA** )
**ex rel. TERRI NIX,** )
)
**STATE OF OKLAHOMA** )
**ex rel. TERRI NIX,** )
)
**STATE OF RHODE ISLAND** )
**ex rel. TERRI NIX,** )
)
**STATE OF TENNESSEE** )
**ex rel. TERRI NIX,** )
)
**STATE OF TEXAS** )
**ex rel. TERRI NIX,** )
)
**STATE OF VIRGINIA** )
**ex rel. TERRI NIX,** )
)
**STATE OF WASHINGTON** )
**ex rel. TERRI NIX, and** )
)
**TERRI NIX, individually,** )
)
**Plaintiff-Relators,** )

2

v.                                             )
                                               )
UNITED BIOLOGICS, LLC                          )
d/b/a UNITED ALLERGY SERVICES                  )
f/k/a UNITED ALLERGY LABS;                     )
DECATUR PEDIATRIC GROUP, P.A.                  )
PRESTON RIDGE PEDIATRIC                        )
ASSOCIATES, PC; BI-COUNTY                      )
GWINNETT PEDIATRICS, P.C.,                     )
NEIL R. NICKELSEN, D.O.; THE                   )
COLUMBUS CLINIC, P.C.; PEDIATRIC               )
ASSOCIATES OF LAWRENCEVILLE,                   )
LLC; GEORGIA MEDICAL                           )
ASSOCIATES, P.C.; FAMILY HEALTH                )
CARE CENTER, INC.; WAYNE FAMILY                )
PRACTICE ASSOCIATES, P.C.; FAMILY              )
PRACTITIONERS OF GLYNN, P.C.;                  )
INTERNAL MEDICINE ASSOCIATES                   )
OF WAYCROSS, P.C.; PETER WROBEL,               )
M.D., P.C.; VALDOSTA FAMILY                    )
MEDICINE ASSOCIATES, P.C.;                     )
BLACKSHEAR FAMILY PRACTICE,                    )
P.C.; GEORGIA MEDICAL TREATMENT                )
CENTER; NORTH GEORGIA                          )
INTERNAL MEDICINE, P.C.; DOUGLAS               )
PEDIATRICS ASSOCIATES, P.C.; EAST              )
COBB PEDIATRICS AND ADOLESCENT                 )
MEDICINE, P.C.; KENNESAW                       )
PEDIATRICS, P.C.; DUNWOODY                     )
VILLAGE CLINIC, P.C.; CARTERSVILLE             )
PEDIATRICS ASSOCIATES, P.C.;                   )
NORTH FULTON INTERNAL                          )
MEDICINE GROUP, P.C.; PEDIATRIC                )
ASSOCIATES, P.C.; PEDIATRIC                    )
ASSOCIATES OF JOHNS CREEK, P.C.;               )
NORTH WHITEVILLE URGENT CARE                   )
AND FAMILY PRACTICE, PA; HOLLY                 )
RIDGE HEALTHCARE, PA;                          )
NORTHSIDE URGENT CARE, INC.;                   )

3

ABC PEDIATRICS OF DUNN, PA;              )
FAMILY WELLNESS CLINIC, P.A.;            )
EASTOVER FAMILY CARE, P.C.;              )
EASTERN CAROLINA MEDICAL                 )
CENTER, P.C.; PELICAN FAMILY             )
MEDICINE, P.A.; PALLADIUM                )
PRIMARY CARE, PA; FRIENDLY               )
URGENT CARE, INC.; CAROMED INC.;         )
CAROLINA FAMILY MEDICINE &               )
URGENT CARE, P.A.; SPEAR CLINIC,         )
P.A.; EAGLE MEDICAL CENTER, PC;          )
TRIAD INTERNAL MEDICINE                  )
ASSOCIATES, P.A.; FREEDOM                )
MEDICAL CLINIC & URGENT CARE,            )
P.A.; ANSON PEDIATRICS, P.C.;            )
BLAND CLINIC, P.A.; GAFFNEY              )
HEALTH SERVICES, P.A.; IMMANUEL          )
FAMILY PRACTICE, P.A.; CAROLINA          )
INTERNAL MEDICINE ASSOCIATES,            )
P.A.; ROXBORO FAMILY MEDICINE &          )
IMMEDIATE CARE, P.C.; NC                 )
PEDIATRIC ASSOCIATES, PLLC; CARY         )
FAMILY PRACTICE & WALK-IN                )
CLINIC, P.C.; NORTH STATE MEDICAL        )
CENTER, P.A.; HOLLY SPRINGS              )
PEDIATRICS, PLLC; CAPITAL                )
PHYSICIANS GROUP, PA; DURHAM             )
FAMILY MEDICINE, PA; MEDACCESS           )
URGENT CARE, PLLC; ALLIANCE              )
FAMILY HEALTH GROUP, LLC;                )
NORTH RALEIGH PEDIATRIC GROUP,           )
P.A.; WAVERLY PRIMARY CARE, PLLC;        )
HICKORY FAMILY PRACTICE                  )
ASSOCIATES, P.A.; LAMOND FAMILY          )
MEDICINE, PLLC; HAZELWOOD                )
FAMILY MEDICINE, PLLC; WNC               )
HYPERTENSION & WELLNESS                  )
CENTER; FAMILY CARE OF FAIRVIEW,         )
P.A.; KINGSPORT PRIMARY CARE,            )

4

P.C.; FAIRBROOK MEDICAL CLINIC,                    )
P.A.; RAINBOW PEDIATRICS, P.A.;                    )
BILTMORE FAMILY MEDICINE, PLLC;                    )
PIEDMONT FAMILY PRACTICE, LLC;                     )
FAMILIES FIRST FAMILY MEDICINE,                    )
PC; EASTSIDE MEDICAL CLINIC, PA;                   )
INTERNAL MEDICINE &                               )
 DIAGNOSTICS GROUP, LLC;                           )
GATEWAY FAMILY MEDICINE OF                         )
TRAVELERS REST, P.A.; PREMIER                      )
CLINICS, PA; OAKTREE MEDICAL                       )
CENTRE, P.C.; THE FAMILY PRACTICE;                 )
POINSETT FAMILY PRACTICE;                          )
PIEDMONT MEDICAL OF S.C., LLC;                     )
GLOBAL FAMILY MEDICINE, LLC;                       )
GAFFNEY FAMILY PHYSICIANS, INC.;                   )
LAKEVIEW URGENT CARE & FAMILY                      )
CLINIC, INC.; SOUTHEASTERN                         )
MEDICAL CLINIC GRAYS CREEK;                        )
RAEFORD FAMILY CARE CENTER,                        )
LLC; ALLERGY CLINICS OF NORTH                      )
CAROLINA, P.C.; CAROLINA URGENT                    )
& FAMILY CARE, P.A.; CAPE FEAR                     )
FAMILY MEDICAL CARE, P.A.; WEST                    )
PRIMARY CARE, INC.; TRINITY                        )
URGENT CARE & FAMILY PRACTICE,                     )
LLC; DILLON FAMILY MEDICINE, P.A.;                 )
MID STATE HEALTH ASSOCIATES,                       )
INC.; PRIME MEDICAL GROUP, P.C.;                   )
LUNCEFORD FAMILY HEALTH                            )
CENTER, P.C.; MEMPHIS PRIMARY                      )
CARE SPECIALISTS, LLC; MAIN                        )
STREET MEDICAL ASSOCIATES; THE                     )
CENTER FOR ADULT MEDICINE, P.A.;                   )
SUMMIT MEDICAL ARTS                               )
ASSOCIATES, LLC; EAR, NOSE &                       )
THROAT SPECIALISTS OF                             )
MORRISTOWN; HERITAGE FAMILY                        )
MEDICINE; GIGLIOTTI FAMILY                         )

5

MEDICINE; STAFFORD MEDICAL, P.A.;   )
WOODBURY PEDIATRICS;   )
SICKLERVILLE INTERNAL MEDICINE;   )
ATRIUM PEDIATRICS; PEDIATRIC   )
& ADULT MEDICINE; SUNSET ROAD   )
MEDICAL ASSOCIATES, P.A.; FAMILY   )
MEDICINE ASSOCIATES   )
WILLIAMSTOWN; FAMILY MEDICINE   )
ASSOCIATES VINELAND; CHERRY   )
HILL PEDIATRICS; FAMIY MEDICINE   )
MT. LAUREL; LERCH & AMATO   )
PEDIATRICS; MEDFORD STATION;   )
HEIGHTS PRIMARY CARE; FAMILY   )
PRACTICE ASSOCIATES AT   )
WASHINGTON, P.A.; BERLIN MEDICAL   )
ASSOCIATES; BERLIN MEDICAL   )
ASSOCIATES AT WINSLOW; AROESTY   )
ENT; WHITE ROSE FAMILY PRACTICE,   )
LLC; EAR NOSE THROAT ASSOCIATES   )
OF CENTRAL PENNSYLVANIA, LLP;   )
FAMILY PRACTICE ASSOCIATES OF   )
WESTERN PA, P.C.; INTERNISTS OF   )
CENTRAL PENNSYLVANIA, LTD;   )
MARTHA L. MOORE, M.D.; GENESIS   )
MEDICAL ASSOCIATES, INC.; CURA   )
FAMILY MEDICINE, P.C.; SOUTHERN   )
COVE MEDICAL ASSOCIATES, INC.,   )
P.C.; HARLEYSVILLE MEDICAL   )
ASSOCIATES, P.C.; STEINBAUM   )
LEVINE ASSOCIATES, LLC; PEDIATRIC   )
ARTS; AYGEN PEDIATRICS & ADULT   )
CARE; MARK KRESS & ASSOCIATES   )
MONTVILL PRACTICE ASSOCIATES,   )
P.A.; BURWELL FAMILY MEDICINE,   )
P.C.; VILLAGE AT NEWTOWN   )
MEDICAL CENTER, P.C.; SCOTCH   )
PLAINS PEDIATRICS; INJURY CARE   )
CENTER, LLC; MADELEINE C. WEISER   )
M.D., P.C.; SOUTHAMPTON MEDICAL   )

6

CENTER; FAMILY HEALTH )
ASSOCIATES, LLC; ROSEMARY A. )
BATES, M.D., P.A.; PEDIATRIC )
HEALTHCARE ASSOCIATES, P.A.; )
PREMIER WELLNESS INTERNAL )
MEDICINE, LLC; MANUEL GRIEGO, )
JR., D.O., P.A.; DRS. KAPLAN & AKINS, )
P.A.; ROCKWALL PEDIATRICS; )
STEVEN G. BANDER, D.O., P.A.; LARRY )
K.  STUBBLEFIELD, D.O.; PATIENT )
FOCUS MEDICAL PRACTICE, P.A.; )
FOREST LANE PEDIATRICS, LLC; KHI )
MEDICAL SOLUTIONS, INC.; SALMA )
MAZHAR, M.D., P.A.; NORTH DALLAS )
ENT GROUP, P.A.; LES T. SANDKNOP, )
D.O., P.A.; PEDIATRIC ASSOCIATES OF )
NORTH TEXAS; MCKINNEY FAMILY )
HEALTHCARE, LP; FRISCO URGENT )
CARE AND CLINICS; NORTH )
COUNTRY FAMILY PRACTICE, P.A.; )
HUGULEY MEDICAL ASSOCIATES; )
ENDOCRINOLOGY INSTITUTE OF )
TEXAS; BILL BURKE, DO, P.A.; CODY )
L.  MIHILLS, M.D., P.A.; EAR, NOSE, & )
THROAT CARE, P.A.; WALTER LEON, )
M.D., P.A.; OAK CLIFF FAMILY )
HEALTHCARE, P.A.; PEDIATRICS OF )
DALLAS; DUNN & CHADWICK )
FAMILY MEDICINE; ALPHA MEDICAL )
CENTER; HARRY HERNANDEZ, D.O., )
P.A.; TOEPPERWEIN FAMILY )
PRACTICE, P.A.; TANYA R. GRUN, )
M.D., P.A.; CARLERICKSON, M.D., P.A.; )
HOWARD H. GALARNEAU JR., D.O., )
P.A.; DAVID A. RAMOS, M.D., P.A.; )
ELMS CREEK FAMILY & URGENT )
CARE CLINIC; DAN FREELAND, DO, )
P.A.; SAN ANTONIO INTERNAL )
MEDICINE PHYSICIANS, PLLC; )

7

ROBERT G. BASS, JR., M.D., P.A.;                    )
PLEASANTON MEDICAL CENTER,                          )
LTD; VITAL LIFE WELLNESS CENTER;                    )
HORMAZD SANJANA, M.D., P.A.; JOY                    )
OBOKHARE, MD; MID COUNTY                            )
MEDICAL GROUP, P.A.; DEKALB                         )
PHYSICIANS CLINIC, PLLC; OLIE                       )
GARRISON, MD; AULT MCINNIS,                         )
PLLC; TYLER INTERNAL MED ASSN;                      )
NEWTON FAMILY CLINIC PA;                            )
HEALTHCARE EXPRESS, LLP; MD2                        )
URGENTCARE CLINIC; VALLEY                           )
MEDICAL CLINIC, LLC; EL PASO                        )
PEDIATRIC ASSOCIATES, PA;                           )
WESTWIND PEDIATRIC CLINIC; SUN                      )
CITY MEDICAL PRACTICE, PA;                          )
CANCER RADIATION & SPECIALTY                        )
CLINICS OF EL PASO, PA; THE                         )
DOCTORS IN; CARLA J. COLE, D.O.,                    )
P.A.; NORTH TEXAS FAMILY                            )
PRACTICE ASSOC; VITAL FAMILY                        )
PRACTICE CENTER; OFFICES OF                         )
FAMILY MEDICINE, PLLC; DAVID W.                     )
CARLSON, M.D., P.A.; VILLAGE                        )
MEDICAL CENTER; KAREN K. KING,                      )
D.O.; OUR FAMILY DOCTOR, P.A.;                      )
FOREST MEDICAL CARE, P.A.;                          )
PRIORITY HEALTH CENTER, LLC;                        )
MAHMOOD B. PANJWANI, M.D., P.A.;                    )
ALL CARE FAMILY & URGENT CARE                       )
CLINICS, PA; FARIDA VALLIANI, MD,                   )
P.A.; BREHM MEDICAL CENTER; PAUL                    )
S. WORRELL, D.O., P.A.; JOYCE M.                    )
SHOTWELL, M.D., P.A.; MEDI CLINIC;                  )
MARK HEAVER, D.O., P.A.; JEFFREY D.                 )
RETTIG, D.O., P.A.; MARTIN G.                       )
MCELYA, D.O., P.A.; REBECCA D.                      )
BUTLER, M.D., PLLC; DALLAS                          )
COMPREHENSIVE MEDICAL CARE,                         )

8

PLLC; JULIE L. REIHSEN, M.D., P.A.;                )
GEORGE L. EASTMAN III, M.D., &                     )
ASSOCIATES; THOMPSON FAMILY                         )
MEDICINE; THE FAMILY DOCTORS,                       )
P.A.; WEST PLANO PEDIATRICS, P.A.;                  )
DOCTORS OF INTERNAL MEDICINE,                       )
P.A.; PLANO PEDIATRICS, P.A.; PIGA                  )
PRIMARY CARE ASSOCIATES, LLC;                       )
PRECISION FAMILY MEDICINE, P.A.;                    )
CARE UNITED MEDICAL CENTERS OF                      )
AMERICA, LLP; J. GREGORY MCCRAY,                    )
D.O.; AKIRKHAN N. DAYA, M.D., P.A.;                 )
FAMILY PRACTICE ASSOCIATES, LLC;                    )
GRANBURY FAMILY MEDCLINIC, P.A.;                    )
PATRICK W. HISEL, M.D., P.A.; DUBLIN                )
FAMILY MEDICINE; SCHMIDT                            )
MEDICAL CENTER, P.A.; S. HOWARD                     )
DICKEY, D.O., P.A.; C. BROOKS SMITH,                )
M.D. & ASSOCIATES; KARE FAMILY                      )
CLINIC, P.A.; D. BLAYNE LAWS, M.D.,                 )
P.A.; ELLIS COUNTY MEDICAL                          )
ASSOCIATES, P.A.; BURROUGHS                         )
MEDICAL CLINIC, P.A.; EMMANUEL E.                   )
SACKEY, M.D., P.A.; WISE FAMILY                     )
PRACTICE; CLINICS OF NORTH                          )
TEXAS, LLP; RADU CIUBUC, M.D., P.A.;                )
ODESSA CONSULTANTS, PLLC; EL                        )
PASO ONCOLOGY AND INTERNAL                          )
MEDICINE, P.A.; JORGE ORTIZ, M.D.,                  )
P.A.; ST. JUDE INTERNATIONAL                        )
CANCER ASSOCIATES; PRIMARY                          )
HEALTHCARE PHYSICIANS;                              )
EASTSIDE FAMILY CARE CENTER;                        )
PHYSICIANS HEALTHCARE                               )
ASSOCIATES, LC; SHYLESH GANTA,                      )
M.D., P.A.; PERMIAN WOMEN'S                         )
CENTER, P.A.; FAMILYMEDICINE &                      )
SKIN CARE CENTER; EL PASO                           )
INTEGRATED PHYSICIANS GROUP,                        )

9

P.A.; RE MEDICAL ASSOCIATES, PA;  )
COMPLETE CARE MIDLAND;  )
COMMUNITY MEDICAL CLINIC;  )
ANGELINA FARELLA, M.D., P.A.; NW  )
CYPRESS PEDIATRICS AND FAMILY  )
MEDICINE, PLLC; SJMC PHYSICIAN  )
SERVICES; OCCUPATIONAL AND  )
FAMILY MEDICINE OF SOUTH TEXAS;  )
AVANTA HEALTH PROFESSIONALS,  )
PA; ABRIGHTER TOMORROW  )
PEDIATRICS; DEIRDRE MCMULLEN,  )
M.D., P.A.; SUGARLAND MED-PED  )
CLINIC; JK FAMILY CLINIC;  )
PISHARODI SURGICALS, INC; OAKS  )
FAMILY PRACTICE CENTER, P.A.;  )
L. KIN SZETO, MD, P.A.; 1960 FAMILY  )
PRACTICE, P.A.; CLEAR LAKE FAMILY  )
PHYSICIANS, PLLC; RGV  )
PREVENTATIVE CARE INC.;  )
QUANTUM PHYSICIANS, PA; JACINTO  )
MEDICAL GROUP, PA; FAMILY  )
MEDICAL CARE, P.A.; JOHN M.  )
YOUNG, M.D., P.A.; MANON E.  )
CHILDERS, III, M.D.; AMARILLO  )
FAMILY PHYSICIANS CLINIC, P.A.;  )
SANGTAE CALEB KIM; FLETCHER &  )
O'GRADY PEDIATRIC ASSOCIATES;  )
RICKY A. SIEWERT, DO; TOTAL CARE  )
HEALTH, PA; PANHANDLE FAMILY  )
CARE, LLC; SAMUEL A. HARE, M.D.;  )
NORTH HILLS FAMILY MEDICINE, PA;  )
INTERNAL MEDICINE CENTER OF  )
FORT WORTH; BASANTI VRUSHAB,  )
M.D., PLLC; TEXAS FAMILICARE  )
MEDICAL GROUP, PLLC; DURBIN  )
FAMILY PRACTICE, P.A.; OLD TOWN  )
MEDICAL CENTER; BLUFFINGTON  )
FAMILY MEDICINE, PLLC;  )
HEALTHCARE ASSOCIATES OF  )

10

IRVING, PLLC; KATHRYN PIFER, D.O.,  )
P.A.; MAXHEALTH MEDICAL  )
ASSOCIATES, P.A.; WINTER PARK  )
FAMILY PRACTICE, LLC; THE  )
PEDIATRIC CENTER; NATCHITOCHES  )
MEDICAL SPECIALISTS, LLC; GILBERT  )
MEDICAL CENTER, PLLC; SEMINOLE  )
MEDICAL CLINIC, LLP; URGENT CARE  )
OF ATOKA, PC; NOEL R. WILLIAMS,  )
M.D., P.C.; AQUILO HEALTH  )
COMPANY, PC; REGIONAL  )
FAMILY MEDICINE, PA; OUACHITA  )
VALLEY FAMILY CLINIC, PA; BHFC  )
WARREN; SOUTHERN MEDICAL  )
GROUP, LLC; BENTON FAMILY  )
CLINIC, PA; LAKE VILLAGE CLINIC,  )
PA; SAMA HEALTH CARE SERVICES,  )
PA; COMPLETE FAMILY MEDICINE,  )
LLC; AXTELL CLINIC, PA;  )
LAKEPOINT FAMILY PHYSICIANS, PA;  )
HARRISONVILLE FAMILY MEDICINE,  )
INC.; LAKESIDE PHYSICIANS GROUP;  )
ARKANSAS CENTRAL PRIMARY  )
CARE, PLLC d/b/a JACKSONVILLE  )
MEDICAL CLINIC; HILLCREST  )
FAMILY PRACTICE, PC; MILESTONE  )
FAMILY MEDICINE, PC; PRESTON  )
RIDGE PEDIATRIC ASSOCIATES, PC;  )
NADAL PEDIATRICS, P.A.;  )
OKLAHOMA CITY GYNECOLOGY  )
AND OBSTETRICS, LLC; ASPEN CREEK  )
MEDICAL ASSOCIATES, P.C.; FRONT  )
RANGE PRIMARY CARE PARTNERS,  )
LLC; BRIM HEALTHCARE OF  )
COLORADO, LLC; AIRPORT CLINIC,  )
INC.; ATLANTA MEDICAL AND  )
AESTHETIC CENTER INC.;  )
ATLANTA ROPHEKA MEDICAL  )
CENTER, P.C.; ATLANTA WOMEN'S  )

SPECIALTY GROUP II, LLC; BRIAN C. )
GRINER, M.D., LLC; BRIAN K. )
NADOLNE, M.D., P.C.; COMMUNITY )
CARE, MD, PC; CUMMING )
PEDIATRIC GROUP, P.C.; DEKALB )
MEDICAL CENTER, INC.; EAST METRO )
INTERNAL MEDICINE, LLC; GREATER )
ATLANTA FAMILY HEALTHCARE, LLC; )
JUST FOR WOMEN, LLC; LIFE CYCLE )
PEDIATRICS, LLC; NEW MILLENNIUM )
OBSTETRICS AND GYNECOLOGY, )
LLC; PHYSICIANS FAMILY MEDICINE )
OF CANTON, LLC; PHYSICIANS )
FAMILY MEDICINE, LLC; QUALITY )
MEDICAL MANAGEMENT SERVICES, )
LLC; REAL HEALTH MEDICAL, LLC; )
ROLF W. MEINHOLD, M.D., P.C.; )
SHAMIL, P.C.; SMOKERISE FAMILY )
MEDICAL ASSOCIATION, P.C.; SY )
MED LLC; URGENT CARE XPRESS, )
L.L.C.; WOODSTOCK FAMILY AND )
URGENT CARE; DEERPATH PRIMARY )
CARE, S.C.; FAMILY MEDICINE )
SPECIALISTS, S.C.; MIRSHED )
MEDICAL CENTER, S.C.; )
NORTHWEST MEDICAL ASSOCIATES )
S.C.; ROBIN SNEAD, M.D., S.C.; )
ACADIANA FAMILY PRACTICE )
ASSOCIATES, L.L.P.; AGAPE EAR, )
NOSE AND THROAT CLINIC, APMC; )
ALLEN L. SPIRES, L.L.C.; BATON )
ROUGE GENERAL PHYSICIANS )
MEDICAL GROUP, L.L.C.; BATON )
ROUGE GENERAL PHYSICIANS, )
INC.; CHAUDHRY CLINIC, LLC; BILLY )
A. MAY, JR, MD APMC; BRIAN )
GRANGER, M.D. APMC; MIRZA A. )
BEG, MD APMC; YAW TWUM-ANTWI, )

M.D.; FAMILY MEDICINE                    )
SPECIALISTS, L.L.C.; FAMILY              )
PRACTICE CENTER OF SULPHUR, LLC;  )
GOODWOOD PRIMARY CARE CLINIC,   )
LLC; JACOBS FAMILY MEDICAL              )
CLINIC INC.; JOSEPH M. GAUTREAUX,   )
III., M.D. APMC; KELLY L. COBB, M.D.,     )
APMC; LEWIS C. CUMMINGS, M.D.,         )
APMC; MAYO MEDICAL CLINIC, INC.;       )
OPTIMAL HEALTH OUT-PATIENT            )
CLINIC, APMC PEDIATRIC MEDICAL        )
CLINIC, INC.; RICHARD B. FEUCHT, II,      )
M.D., L.L.C.; KEVIN T. SCHLAMP, M.D.,     )
L.L.C.; SLIDELL INTERNAL MEDICINE      )
CLINIC, L.L.C.; SOUTHERN PEDIATRIC     )
CLINIC, INC. APMC; VARNADO               )
FAMILY PRACTICE, LLC; WARREN J.        )
DEGATUR JR., M.D., APMC;                   )
YOUNGSVILLE MEDICAL                      )
CLINIC, L.L.C.; CALVARY INTERNAL        )
MEDICINE, PC; CORNELIUS F.               )
CATHCART, PEDIATRICS, PA;                )
KERNODLE CLINIC, INC.;                     )
FAYETTEVILLE URGENT CARE AND         )
FAMILY MEDICINE, PA; FIRST CARE        )
MEDICAL CLINIC, INC.;                       )
HOPE MILLS URGENT CARE AND           )
MEDICAL CLINIC, P.L.L.C.; PHYSICAL      )
MEDICINE AND REHABILITATION           )
CENTER, PLLC; RANDOLPH PRIMARY       )
CARE, PA; RANDOLPH PULMONARY &     )
SLEEP CLINIC, PLLC; GIBBONS             )
FAMILY MEDICINE, P.A.; VICKERY          )
FAMILY MEDICINE, PLLC; ROXBORO        )
MED ACCESS PLLC; SOUTHEASTERN        )
REGIONAL PHYSICIAN SERVICES;           )
DEPERSIA, CHERNOFF & OCASIO, P.C.;   )
HEALTH MED ASSOCIATES, P.C.;            )

13

BAKER FORE BUSINESS ASSOCIATES,      )
INC.; CHARLES K. JONES, M.D.;          )
D GUIN JOHNSON MD INC; DENNIS E.       )
SANDLER, M.D.; FAMILY MEDICAL          )
AND URGENT CARE CENTER, LLC;           )
FOUNTAIN PARK FAMILY                   )
PHYSICIANS; INTEGRATIVE                )
MEDICAL SOLUTIONS, PLLC; KELLEY        )
FAMILY, L.L.C.; LISA J. WASEMILLER-    )
SMITH, M.D., INC.; MARK OATMAN,        )
M.D., P.L.L.C.; MCMAHAN FAMILY,        )
L.L.C.; MIDWEST MEDICAL GROUP,         )
PLLC; PETER BULLOCK, M.D., P.C.;       )
RODNEY J. MILES, M.D., INC.; SOUTH     )
MOORE MEDICAL CLINIC, PC;              )
SOUTHERN PLAINS MEDICAL                )
CENTER, P.C.; STATCARE CLINICS OF      )
GREEN COUNTRY, L.L.C.; OKLAHOMA        )
CITY EAR, NOSE & THROAT CLINIC,        )
P.C.; GOOD HEALTH ASSOCIATES,          )
PLLC; HAMILTON PEDIATRICS;             )
ADAM S. MINER, M.D., P.A.;             )
ALAMO AREA FAMILY & GERIATRIC          )
MEDICINE ASSOCIATES; ALVEAR            )
FAMILY FIRST, P.A.; CASTLE HILLS       )
FAMILY PRACTICE; CENTRAL TEXAS         )
URGENT CARE, P.A.; CLINIC CLARK        )
MEDICAL CENTER; COPPELL                )
ASSOCIATES IN FAMILY MEDICINE,         )
P.A.; COPPELL CLINIC, P.A.; CORPUS     )
CHRISTI WELLNESS CENTER;               )
DAVID A. RAY, D.O., P.A.;              )
JON W. COPELAND, D.O., P.A.;           )
DENISE M. CASPER, D.O., P.A.;          )
DIAMOND HILL MEDICAL CENTER,           )
P.A.; DOCTORS CLINIC HOUSTON;          )
DOCTORS CLINIC                         )
HOUSTON-NW FREEWAY; DOCTORS            )

14

CLINIC HOUSTON-NORTH FREEWAY;     )
DOCTORS CLINIC HOUSTON-     )
SOUTHWEST FREEWAY; DOCTORS     )
CLINIC HOUSTON-GULF FREEWAY;     )
DOCTORS CLINIC HOUSTON-EAST     )
FREEWAY; FRANCIS M. GUMBEL, M.D.,     )
P.A.; DR. MARIO R. ANZALDUA, MD,     )
PA; WYATT WEBB, MD, PA; FAMILY &     )
SENIOR MEDICAL CL INIC P.A.;     )
FAMILY MEDICINE AND URGENT     )
CARE; FAMILY MEDICINE     )
ASSOCIATES OF STEPHENVILLE;     )
FAMILY PRACTICE CLINIC; GOOD     )
SHEPARD PHYSICIAN SERVICES, INC.;     )
GUSTAVO E. VILLARREAL, M.D., P.A.;     )
GWENDOLYN ALLEN MD PA;     )
JAGANNATH LLC; JAY CHAVDA M.D.,     )
P.A.; JENNIFER GWOZDZ PA; JOHN     )
GARCIA, M.D., PA; JOSE PEREZCASSAR )
MD PA; KELSOM CLINIC, P.A.; LAREDO )
FAMILY MEDICINE, P.A.;     )
LAWRENCE A. ALDER, M.D., P.A.;     )
LONE STAR STATE DERMATOLOGY     )
CLINIC, PLLC; MEDSTREAM     )
WELLNESS MEDICAL GROUP LLC;     )
NORBERTO ALVAREZ JR. MD PA;     )
NORTH CENTRAL TEXAS FAMILY     )
MEDICINE, P.A.; OM SAKTHI, P.A.;     )
PINELOCH MEDICAL CLINIC, P.A.;     )
PRIMARY AND DIAGNOSTIC     )
MEDICAL CENTERS OF TEXAS P.C.;     )
PULMONARY MEDICINE &     )
WELLNESS CENTER; RED BIRD     )
COMMUNITY HEALTH CENTER, LLC;     )
ROCKPORT URGENT CARE CENTER,     )
PLLC; STEPHANIE J. MORTON, M.D.,     )
PLLC; THOMAS D. NEWELL, PLLC;     )
ADULT INTERNAL MEDICINE     )

15

SHERMAN; TEXAS HEALTH )
PHYSICIANS GROUP; UPTOWN )
HEALTH AND WELLNESS CENTER OF )
CEDAR HILL, LLC; VICTORY )
MEDICAL & FAMILY CARE; WEE TOTS )
PEDIATRICS, P.A.; SOUND INTERNAL )
MEDICINE, INC.; WINDERMERE )
MEDICAL CLINIC; MAGNOLIA )
MEDICAL CLINIC, P.C.; GOLDEN ISLES )
FAMILY MEDICINE, P.C.; PREMIER )
IMMEDIATE CARE OF GEORGIA, P.C.; )
J. HAROLD ACEVEDO, M.D., P.C. d/b/a )
AUGUSTA PEDIATRICS; CHATHAM )
SAVANNAH MEDICAL GROUP, PC; )
IVETA BERZINCH, M.D., PC d/b/a )
PINEVIEW PEDIATRICS; WEST )
AUGUSTA PEDIATRICS, P.C.; )
PEDIATRICS AT WHITLOCK, P.C.; )
OCONEE E.N.T. & COSMETIC SURGERY )
CENTER, P.C.; NORCROSS PEDIATRICS )
AND ADOLESCENT MEDICINE INC; )
INTOWN PRIMARY CARE, P.C.; )
FAMILY MEDICINE SPECIALISTS, P.C.; )
GEORGIA MEDICAL ASSOCIATES, P.C.; )
D. CONRAD HARPER MD, LLC; )
MILTON HALL SURGICAL )
ASSOCIATES, LLC; CANTON EAR NOSE )
& THROAT CLINIC P.C.; )
A. REGINALD PILCHER, M.D., P.C., )
JOHN DOE MEDICAL PRACTICES, )
JAMES STRADER; AMERICA STRADER; )
LARRY SMITH; NICK HOLLIS; and )
JOHN BERBARIAN; )
)
Defendants. )

16

## FIRST AMENDED COMPLAINT

Relator Terri Nix, on behalf of herself, the United States of America, and the States of California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Iowa, Louisiana, Maryland, Minnesota, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, and Washington, brings this action under 31 U.S.C. §§ 3729–3732 ("False Claims Act") and each Plaintiff-State's respective False Claims Act ("State False Claims Acts") to recover all damages, penalties, and other remedies established by the False Claims Act on behalf of the United States and herself, and each applicable State False Claims Act on behalf of the Plaintiff-States and herself, and would show the following:

## JURISDICTION AND VENUE

1.      This action arises under the False Claims Act, as amended, 31 U.S.C. §§ 3729 *et seq.*, and the State False Claims Acts.

2.      This court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a), 31 U.S.C. § 3732(b), and 28 U.S.C. § 1345.

3.      To the extent jurisdiction was in question due to the previous pendancy of the case of *U.S. ex rel. Vaughn v. United Biologics, LLC, et al.*, Case No. 4:13-cv-1081 in the Southern District of Texas, such issue is cured by the dismissal of that

17

action on March 31, 2017 and this Amendment, which specifically avers jurisdiction.

4.     This court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a) in that Defendants do or transact business in this jurisdiction and the violations of the False Claims Act and the State False Claims Act described herein were carried out in this district.

5.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and under 31 U.S.C. § 3732(a).

**THE PARTIES**

6.     United Biologics, LLC d/b/a United Allergy Services f/k/a United Allergy Labs ("UAS") is a healthcare services company that contracts with medical service providers to provide allergy testing and other services. UAS is registered in the state of Georgia as a foreign limited liability company incorporated in Delaware. Its principal office address is 100 N.E. Loop 410, San Antonio, Texas 78216.

7.     Decatur Pediatric Group, P.A.; Preston Ridge Pediatric Associates, PC; Bi-County Gwinnett Pediatrics, P.C.; Neil R. Nickelsen, D.O.; The Columbus Clinic, P.C.; Pediatric Associates Of Lawrenceville, LLC; Georgia Medical Associates, P.C.; Family Health Care Center, Inc.; Wayne Family Practice Associates, P.C.;

Family Practitioners Of Glynn, P.C.; Internal Medicine Associates of Waycross, P.C.; Peter Wrobel, M.D., P.C.; Valdosta Family Medicine Associates, P.C.; Blackshear Family Practice, P.C.; Georgia Medical Treatment Center; North Georgia Internal Medicine, P.C.; Douglas Pediatrics Associates, P.C.; East Cobb Pediatrics And Adolescent Medicine, P.C.; Kennesaw Pediatrics, P.C.; Dunwoody Village Clinic, P.C.; Cartersville Pediatrics Associates, P.C.; North Fulton Internal Medicine Group, P.C.; Pediatric Associates, P.C.; Pediatric Associates of Johns Creek, P.C.; North Whiteville Urgent Care and Family Practice, PA; Holly Ridge Healthcare, PA; Northside Urgent Care, Inc.; ABC Pediatrics of Dunn, PA; Family Wellness Clinic, P.A.; Eastover Family Care, P.C.; Eastern Carolina Medical Center, P.C.; Pelican Family Medicine, P.A.; Palladium Primary Care, PA; Friendly Urgent Care, Inc.; Caromed Inc.; Carolina Family Medicine & Urgent Care, P.A.; Spear Clinic, P.A.; Eagle Medical Center, PC; Triad Internal Medicine Associates, P.A.; Freedom Medical Clinic & Urgent Care, P.A.; Anson Pediatrics, P.C.; Bland Clinic, P.A.; Gaffney Health Services, P.A.; Immanuel Family Practice, P.A.; Carolina Internal Medicine Associates, P.A.; Roxboro Family Medicine & Immediate Care, P.C.; NC Pediatric Associates, PLLC; Cary Family Practice & Walk-In Clinic, P.C.; North State Medical Center, P.A.; Holly Springs Pediatrics, PLLC; Capital Physicians Group, PA; Durham

Family Medicine, PA; Medaccess Urgent Care, PLLC; Alliance Family Health Group, LLC; North Raleigh Pediatric Group, P.A.; Waverly Primary Care, PLLC; Hickory Family Practice Associates, P.A.; Lamond Family Medicine, PLLC; Hazelwood Family Medicine, PLLC; WNC Hypertension & Wellness Center; Family Care of Fairview, P.A.; Kingsport Primary Care, P.C.; Fairbrook Medical Clinic, P.A.; Rainbow Pediatrics, P.A.; Biltmore Family Medicine, PLLC; Piedmont Family Practice, LLC; Families First Family Medicine, PC; Eastside Medical Clinic, PA; Internal Medicine & Diagnostics Group, LLC; Gateway Family Medicine of Travelers Rest, P.A.; Premier Clinics, PA; Oaktree Medical Centre, P.C.; The Family Practice; Poinsett Family Practice; Piedmont Medical Of S.C., LLC; Global Family Medicine, LLC; Gaffney Family Physicians, Inc.; Lakeview Urgent Care & Family Clinic, Inc.; Southeastern Medical Clinic Grays Creek; Raeford Family Care Center, LLC; Allergy Clinics Of North Carolina, P.C.; Carolina Urgent & Family Care, P.A.; Cape Fear Family Medical Care, P.A.; West Primary Care, Inc.; Trinity Urgent Care & Family Practice, LLC; Dillon Family Medicine, P.A.; Mid State Health Associates, Inc.; Prime Medical Group, P.C.; Lunceford Family Health Center, P.C.; Memphis Primary Care Specialists, LLC; Main Street Medical Associates; The Center For Adult Medicine, P.A.; Summit Medical Arts Associates, LLC; Ear, Nose & Throat Specialists of

Morristown; Heritage Family Medicine; Gigliotti Family Medicine; Stafford Medical, P.A.; Woodbury Pediatrics; Sicklerville Internal Medicine; Atrium Pediatrics; Pediatric & Adult Medicine; Sunset Road Medical Associates, P.A.; Family Medicine Associates Williamstown; Family Medicine Associates Vineland; Cherry Hill Pediatrics; Family Medicine Mt. Laurel; Lerch & Amato Pediatrics; Medford Station; Heights Primary Care; Family Practice Associates at Washington, P.A.; Berlin Medical Associates; Berlin Medical Associates at Winslow; Aroesty ENT; White Rose Family Practice, LLC; Ear Nose Throat Associates of Central Pennsylvania, LLP; Family Practice Associates of Western PA, P.C.; Internists of Central Pennsylvania, LTD; Martha L. Moore, M.D.; Genesis Medical Associates, Inc.; Cura Family Medicine, P.C.; Southern Cove Medical Associates, Inc., P.C.; Harleysville Medical Associates, P.C.; Steinbaum Levine Associates, LLC; Pediatric Arts; Aygen Pediatrics & Adult Care; Mark Kress & Associates; Montville Practice Associates, P.A.; Burwell Family Medicine, P.C.; Village At Newtown Medical Center, P.C.; Scotch Plains Pediatrics; Injury Care Center, LLC; Madeleine C. Weiser M.D., P.C.; Southampton Medical Center; Family Health Associates, LLC; Rosemary A. Bates, M.D., P.A.; Pediatric Healthcare Associates, P.A.; Premier Wellness Internal Medicine, LLC; Manuel Griego, Jr., D.O., P.A.; Drs. Kaplan & Akins,

21

P.A.; Rockwall Pediatrics; Steven G. Bander, D.O., P.A.; Larry K. Stubblefield, D.O.; Patient Focus Medical Practice, P.A.; Forest Lane Pediatrics, LLC; Khi Medical Solutions, Inc.; Salma Mazhar, M.D., P.A.; North Dallas Ent Group, P.A.; Les T. Sandknop, D.O., P.A.; Pediatric Associates of North Texas; McKinney Family Healthcare, LP; Frisco Urgent Care And Clinics; North Country Family Practice, P.A.; Huguley Medical Associates; Endocrinology Institute of Texas; Bill Burke, DO, P.A.; Cody L. Mihills, M.D., P.A.; Ear, Nose, & Throat Care, P.A.; Walter Leon, M.D., P.A.; Oak Cliff Family Healthcare, P.A.; Pediatrics of Dallas; Dunn & Chadwick Family Medicine; Alpha Medical Center; Harry Hernandez, D.O., P.A.; Toepperwein Family Practice, P.A.; Tanya R. Grun, M.D., P.A.; Carl Erickson, M.D., P.A.; Howard H. Galarneau Jr., D.O., P.A.; David A. Ramos, M.D., P.A.; Elms Creek Family & Urgent Care Clinic; Dan Freeland, DO, P.A.; San Antonio Internal Medicine Physicians, PLLC; Robert G. Bass, Jr., M.D., P.A.; Pleasanton Medical Center, LTD; Vital Life Wellness Center; Hormazd Sanjana, M.D., P.A.; Joy Obokhare, MD; Mid County Medical Group, P.A.; Dekalb Physicians Clinic, PLLC; Olie Garrison, MD; Ault Mcinnis, PLLC; Tyler Internal Med Assn; Newton Family Clinic PA; Healthcare Express, LLP; Md2 Urgentcare Clinic; Valley Medical Clinic, LLC; El Paso Pediatric Associates, PA; Westwind Pediatric Clinic; Sun City Medical Practice, PA; Cancer Radiation & Specialty

22

Clinics Of El Paso, PA; The Doctors In; Carla J. Cole, D.O., P.A.; North Texas

Family Practice Assoc; Vital Family Practice Center; Offices of Family Medicine,

PLLC; David W. Carlson, M.D., P.A.; Village Medical Center; Karen K. King,

D.O.; Our Family Doctor, P.A.; Forest Medical Care, P.A.; Priority Health Center,

LLC; Mahmood B. Panjwani, M.D., P.A.; All Care Family & Urgent Care Clinics,

PA; Farida Valliani, Md, P.A.; Brehm Medical Center; Paul S. Worrell, D.O., P.A.;

Joyce M. Shotwell, M.D., P.A.; Medi Clinic; Mark Heaver, D.O., P.A.; Jeffrey D.

Rettig, D.O., P.A.; Martin G. Mcelya, D.O., P.A.; Rebecca D. Butler, M.D., PLLC;

Dallas Comprehensive Medical Care, PLLC; Julie L. Reihsen, M.D., P.A.; George

L. Eastman III, M.D., & Associates; Thompson Family Medicine; The Family

Doctors, P.A.; West Plano Pediatrics, P.A.; Doctors Of Internal Medicine, P.A.;

Plano Pediatrics, P.A.; Piga Primary Care Associates, LLC; Precision Family

Medicine, P.A.; Care United Medical Centers of America, LLP; J. Gregory

McCray, D.O.; Akirkhan N. Daya, M.D., P.A.; Family Practice Associates, LLC;

Granbury Family Medclinic, P.A.; Patrick W. Hisel, M.D., P.A.; Dublin Family

Medicine; Schmidt Medical Center, P.A.; S. Howard Dickey, D.O., P.A.; C.

Brooks Smith, M.D. & Associates; Kare Family Clinic, P.A.; D. Blayne Laws,

M.D., P.A.; Ellis County Medical Associates, P.A.; Burroughs Medical Clinic,

P.A.; Emmanuel E. Sackey, M.D., P.A.; Wise Family Practice; Clinics Of North

Texas, LLP; Radu Ciubuc, M.D., P.A.; Odessa Consultants, PLLC; El Paso Oncology and Internal Medicine, P.A.; Jorge Ortiz, M.D., P.A.; St. Jude International Cancer Associates; Primary Healthcare Physicians; Eastside Family Care Center; Physicians Healthcare Associates, LC; Shylesh Ganta, M.D., P.A.; Permian Women's Center, P.A.; Family Medicine & Skin Care Center; El Paso Integrated Physicians Group, P.A.; Re Medical Associates, PA; Complete Care Midland; Community Medical Clinic; Angelina Farella, M.D., P.A.; NW Cypress Pediatrics and Family Medicine, PLLC; SJMC Physician Services; Occupational and Family Medicine of South Texas; Avanta Health Professionals, PA; A Brighter Tomorrow Pediatrics; Deirdre McMullen, M.D., P.A.; Sugarland Med-Ped Clinic; JK Family Clinic; Pisharodi Surgicals, Inc; Oaks Family Practice Center, P.A.; L. Kin Szeto, MD, P.A.; 1960 Family Practice, P.A.; Clear Lake Family Physicians, PLLC; RGV Preventative Care Inc.; Quantum Physicians, PA; Jacinto Medical Group, PA; Family Medical Care, P.A.; John M. Young M.D., P.A.; Manon E. Childers, III, M.D.; Amarillo Family Physicians Clinic, P.A.; Sangtae Caleb Kim; Fletcher & O'Grady Pediatric Associates; Ricky A. Siewert, DO; Total Care Health, PA; Panhandle Family Care, LLC; Samuel A. Hare, M.D.; North Hills Family Medicine, PA; Internal Medicine Center Of Fort Worth; Basanti Vrushab, M.D., PLLC; Texas Familicare Medical Group, PLLC; Durbin

24

Family Practice, P.A.; Old Town Medical Center; Bluffington Family Medicine, PLLC; Healthcare Associates Of Irving, PLLC; Kathryn Pifer, D.O., P.A.; Maxhealth Medical Associates, P.A.; Winter Park Family Practice, LLC; The Pediatric Center; Natchitoches Medical Specialists, LLC; Gilbert Medical Center, PLLC; Seminole Medical Clinic, LLP; Urgent Care Clinic of Atoka, PC; Aquilo Health Company, PC; Noel R. Williams, M.D., P.C.; Regional Family Medicine, PA; Ouachita Valley Family Clinic, PC; BHFC Warren; Southern Medical Group, LLC; Benton Family Clinic; Lake Village Clinic, PA; SAMA Health Care Services, PA; Complete Family Medicine, LLC; Axtell Clinic, PA; Lakepoint Family Physicians, PA; Harrisonville Family Medicine, Inc.; Lakeside Physicians Group; Arkansas Central Primary Care, PLLC d/b/a Jacksonville Medical Clinic; Hillcrest Family Practice, PC; Milestone Family Medicine, PC; Preston Ridge Pediatric Associates, PC; Nadal Pediatrics, PA; Oklahoma City Gynecology and Obstetrics, LLC; Aspen Creek Medical Associates, P.C.; Front Range Primary Care Partners, LLC; Brim Healthcare of Colorado, LLC; Airport Clinic, Inc.; Atlanta Medical and Aesthetic Center Inc.; Atlanta Ropheka Medical Center, PC; Atlanta Women's Specialty Group II, LLC; Brian C. Griner, M.D., LLC; Brian K. Nadolne, M.D., P.C.; Community Care, MD, PC; Cumming Pediatric Group, P.C.; Dekalb Medical Center, Inc.; East Metro Internal Medicine, L.L.C.; Greater

Atlanta Family Healthcare, LLC; Just for Women, LLC; Life Cycle Pediatrics, LLC; New Millennium Obstetrics and Gynecology, LLC; Physicians Family Medicine of Canton, LLC; Physicians Family Medicine, LLC; Quality Medical Management Services, LLC; Real Health Medical, LLC; Rolf W. Meinhold, M.D., P.C.; Shamil, P.C.; Smokerise Family Medical Association, P.C.; Sy Med LLC; Urgent Care Xpress, L.L.C.; Woodstock Family and Urgent Care; Deerpath Primary Care, S.C.; Family Medicine Specialists, S.C.; Mirshed Medical Center, S.C.; Northwest Medical Associates S.C.; Robin Snead, M.D., S.C.; Acadiana Family Practice Associates, L.L.P.; Agape Ear, Nose, and Throat Clinic, APMC; Allen L. Spires, L.L.C.; Baton Rouge General Physicians Medical Group, L.L.C.; Baton Rouge General Physicians, Inc.; Chaudhry Clinic, LLC; Billy A. May, Jr, MD APMC; Brian Granger, M.D. APMC; Mirza A. Beg, MD APMC; Yaw Twum-Antwi, M.D.; Family Medicine Specialists, L.L.C.; Family Practice Center of Sulphur, LLC; Goodwood Primary Care Clinic, LLC; Jacobs Family Medical Clinic Inc.; Joseph M. Gautreaux, III., M.D. APMC; Kelly L. Cobb, M.D., APMC; Lewis C. Cummings, M.D., APMC; Mayo Medical Clinic, Inc.; Optimal Health Out-Patient Clinic, APMC; Pediatric Medical Clinic, Inc.; Richard B. Feucht, II, M.D., L.L.C.; Kevin T. Schlamp, M.D., L.L.C.; Slidell Internal Medicine Clinic, L.L.C.; Southern Pediatric Clinic, Inc. APMC; Varnado Family Practice, LLC;

Warren J. Degatur Jr., M.D., APMC; Youngsville Medical Clinic, L.L.C.; Calvary Internal Medicine, PC; Cornelius F. Cathcart, Pediatrics, PA; Kernodle Clinic, Inc.; Fayetteville Urgent Care and Family Medicine, PA; First Care Medical Clinic, Inc.; Hope Mills Urgent Care and Medical Clinic, P.L.L.C.; Physical Medicine and Rehabilitation Center, PLLC; Randolph Primary Care, PA; Randolph Pulmonary & Sleep Clinic, PLLC; Gibbons Family Medicine, P.A.; Vickery Family Medicine, PLLC; Roxboro Med Access PLLC; Southeastern Regional Physician Services; Depersia, Chernoff & Ocasio, P.C.; Health Med Associates, P.C.; Baker Fore Business Associates, Inc.; Charles K. Jones, M.D.; D Guin Johnson MD Inc; Dennis E. Sandler, M.D.; Family Medical and Urgent Care Center, LLC; Fountain Park Family Physicians; Integrative Medical Solutions, PLLC; Kelley Family, L.L.C.; Lisa J. Wasemiller-Smith, M.D., Inc.; Mark Oatman, M.D., P.L.L.C.; McMahan Family, L.L.C.; Midwest Medical Group, PLLC; Peter Bullock, M.D., P.C.; Rodney J. Miles, M.D., Inc.; South Moore Medical Clinic, PC; Southern Plains Medical Center, P.C.; STATCare Clinics of Green Country, L.L.C.; Oklahoma City Ear, Nose & Throat Clinic, P.C.; Good Health Associates, PLLC; Hamilton Pediatrics; Adam S. Miner, M.D., P.A.; Alamo Area Family & Geriatric Medicine Associates; Alvear Family First, P.A.; Castle Hills Family Practice; Central Texas Urgent Care, P.A.; Clinic Clark Medical Center; Coppell

Associates in Family Medicine, P.A.; Coppell Clinic, P.A.; Corpus Christi Wellness Center; David A. Ray, D.O., P.A.; Jon W. Copeland, D.O., P.A.; Denise M. Casper, D.O., P.A.; Diamond Hill Medical Center, P.A.; Doctors Clinic Houston; Doctors Clinic Houston-NW Freeway; Doctors Clinic Houston-North Freeway; Doctors Clinic Houston-Southwest Freeway; Doctors Clinic Houston-Gulf Freeway; Doctors Clinic Houston-East Freeway; Francis M. Gumbel, M.D., P.A.; Dr. Mario R. Anzaldua, MD, PA; Wyatt Webb, MD, PA; Family & Senior Medical Clinic P.A.; Family Medicine and Urgent Care; Family Medicine Associates of Stephenville; Family Practice Clinic; Good Shepard Physician Services, Inc.; Gustavo E. Villarreal, M.D., P.A.; Gwendolyn Allen MD PA; Jagannath LLC; Jay Chavda M.D., P.A.; Jennifer Gwozdz PA; John Garcia, M.D., PA; Jose PerezCassar MD PA; Kelsom Clinic, P.A.; Laredo Family Medicine, P.A.; Lawrence A. Alder, M.D., P.A.; Lone Star State Dermatology Clinic, PLLC; Medstream Wellness Medical Group LLC; Norberto Alvarez Jr. MD PA; North Central Texas Family Medicine, P.A.; OM Sakthi, P.A.; Pineloch Medical Clinic, P.A.; Primary and Diagnostic Medical Centers of Texas P.C.; Pulmonary Medicine & Wellness Center; Red Bird Community Health Center, LLC: Rockport Urgent Care Center, PLLC; Stephanie J. Morton, M.D., PLLC; Thomas D. Newell, PLLC; Adult Internal Medicine Sherman; Texas Health Physicians

Group (d/b/a Aim for Wellness; AIM Mid-Cities; Arlington Medical Clinic; Arlington Premier Health Clinic; Benchmark Family Medical Center Rockwall; Benchmark Family Medicine Rowlett; Beshears Family Healthcare; Carrollton Family Physicians; Cityview Family Physicians; Cornerstone Family Sports Med; David L. Reeve, M.D. & Associates; Denton Internal Medicine Associates; Esiquiel P. Olivarez Jr., D.O.; Family Centered Medical Group; Family Medical Center Southwest; Family Medicine Clinic of Sunnyvale; Forney Family Medical; Frances Dilley, M.D.; Hoffman Family Practice Associates; Inova Family Physicians; Keller Family Healthcare; Kids Docs; Lake Worth Family Medicine; Lakeside Family and Sports Medicine; Launey Family Medical & Surgical Group; Levy Pediatrics Lake Worth; Lewisville Family & Urgent Care; Lifetime Family Medicine; Mansfield Family Clinic; Medical Associates at Willow Park Family Medicine; Medicine Associates of Kaufman; Medicine Associates of North Texas; Paluxy Road Medical Clinic; R.K. Stahlman II, DO; Sharon Kirven, M.D., PA; Shaw Breeze Pediatrics; Stonebridge Internal Medicine; Sunnyvale; Tiena Health Family Medicine; Tiena Health Frisco; Addison Family Medicine Associates; Aledo Family Medicine; Anna Burke, MD; Benbrook Family Practice; Burrows Clinic; Castle Hill Pediatrics; Cheryl Richards, DO; Complete Family Clinic; Coppell Family Medical Center; First Family Care Keller; Grapevine Family

29

Physicians; Highlands Medical Group; Hogan Medical for Your Family; INOVA Mesquite Family Medicine; INOVA Richardson; Judy Yates, MD; Leading Edge Medicine; Main Street Family Physicians; Mansfield Internal Medicine; Metro Medical; Richard P. Townsend, MD; Steven Cohen; Synergy Internal Medicine; Timothy McGuire, MD; Trinity Marsh Medical Clinic; and Western Center Family Medicine); Uptown Health and Wellness Center of Cedar Hill, LLC; Victory Medical & Family Care; Wee Tots Pediatrics, P.A.; Sound Internal Medicine, Inc.; Windermere Medical Clinic; Magnolia Medical Clinic, P.C.; Golden Isles Family Medicine, P.C.; J. Harold Acevedo, M.D., P.C. d/b/a Augusta Pediatrics; Chatham Savannah Medical Group, PC; Iveta Berzinch, M.D., PC d/b/a Pineview Pediatrics; West Augusta Pediatrics, P.C.; Pediatrics at Whitlock, P.C.; Oconee E.N.T. & Cosmetic Surgery Center, P.C.; Norcross Pediatrics and Adolescent Medicine Inc; Intown Primary Care P.C.; Family Medicine Specialists, P.C.; Georgia Medical Associates, P.C.; D. Conrad Harper MD, LLC; Milton Hall Surgical Associates, LLC; Canton Ear Nose & Throat Clinic P.C.; A. Reginald Pilcher, M.D., PC; and John Doe Medical Practices (hereinafter "Medical Practices") are medical service providers that contracted with UAS for the services described herein.

8. Relator Terri Nix is a resident of Decatur, Georgia.

30

9.      Relator Terri Nix worked at UAS as an Allergy Business Consultant from April 22, 2013 until mid-September 2013.

10.      Relator's job responsibilities as an Allergy Business Consultant included providing nationwide physician and staff training to Medical Practices implementing the UAS service line into their practices.

11.      Relator was also responsible for approximately 26 accounts in Georgia, and provided educational training, field support, and marketing services to those medical practices.

12.      Relator Nix was promoted to Business Development Representative from mid-September 2013 until her termination on or about February 7, 2014.

13.      As a Business Development Representative, Relator Nix managed approximately 45 national high priority accounts, including accounts in Arkansas, Florida, Georgia, Kansas, Louisiana, Missouri, South Carolina, Texas, and Oklahoma.

14.      During her employment at UAS, Terri Nix's managed accounts included Blackshear Family Practice; Family Health Care Center, P.C.; Wayne Family Practice Associates, P.C.; Family Practitioners of Glynn, P.C.; Internal Medicine Associates of Waycross; Preston Ridge Pediatric Associates, P.C.; Peter Wrobel, M.D., P.C.; Valdosta Family Medicine; North Georgia Internal Medicine P.C.;

31

Douglas Pediatrics Associates, P.C.; East Cobb Pediatrics and Adolescent Medicine, P.C.; Kennesaw Pediatrics, P.C.; Cartersville Pediatrics Associates, P.C.; North Fulton Internal Medicine Group; Pediatric Associates, P.C.; Pediatric Associates of Johns Creek, P.C.; The Columbus Clinic, P.C.; Decatur Pediatric Group, P.A.; Georgia Medical Associates; Bi-County Gwinnett Pediatrics, P.C.; Pediatric Associates of Lawrenceville, LLC; Hillcrest Family Practice; Carolina Internal Medicine Associates, P.A.; Milestone Family Medicine; Poinsett Family Practice; Winter Park Family Practice, LLC; Regional Family Medicine, PA; Ouachita Valley Family Clinic, PC; BHFC Warren; Southern Medical Group, LLC; Benton Family Clinic; Lake Village Clinic, PA; SAMA Health Care Services, PA; Complete Family Medicine, LLC; Axtell Clinic, PA; Lakepoint Family Physicians, PA; Harrisonville Family Medicine, Inc.; Lakeside Physicians Group; Tyler Internal Medicine Associates, P.A.; The Pediatric Center; Natchitoches Medical Specialists, LLC; Healthcare Express; Gilbert Medical Center, PLLC; Seminole Medical Clinic, LLP; Urgent Care Clinic of Atoka, PC; Aquilo Health Company, PC; Noel R. Williams, M.D., P.C.; Arkansas Central Primary Care, PLLC d/b/a Jacksonville Medical Clinic; and Nadal Pediatrics, P.A.

15.     Defendants James Strader, Larry Smith, John Berberian, and Nick Hollis are current and former owners and operators of UAS who reaped the financial

32

benefits of the fraud alleged herein.

16.    As CEO, Nick Hollis signed many of the services agreements discussed herein that violate the Anti-Kickback Statute.

17.    Defendant America Strader is the wife of James Strader, to whom James Strader has transferred much of his share of the ill-gotten gains from the schemes alleged herein.

18.    As a nationwide trainer and account manager, Relator Nix has firsthand knowledge and is an original source of the facts and schemes alleged herein.

## FEDERALLY FUNDED HEALTH PROGRAMS

19.    Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.*, establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare program. The Secretary of Health and Human Services ("HHS") administers the Medicare Program through the Centers for Medicare and Medicaid Services ("CMS").

20.    The Medicare program is comprised of four parts. Medicare Part A ("Hospital Insurance") provides basic insurance for the costs of hospitalization and post hospitalization care. 42 U.S.C. §§ 1395c—i-5. Medicare Part B ("Medical Insurance") is a federally subsidized, voluntary insurance program that covers the fee schedule amount for doctors' services, outpatient care, medical supplies,

and laboratory services. 42 U.S.C. §§ 1395j—w-5. Medicare Part C ("Medicare Advantage Plans") is a plan offered by private insurers that contract with Medicare to provide Part A and Part B benefits. 42 U.S.C. §§ 1395w-21—w-28. Medicare Part D ("Prescription Drug Coverage") is a plan offered by private insurers approved by Medicare to provide basic insurance for prescription drugs. 42 U.S.C. §§ 1395w-101—w-154.

21.     Reimbursement for Medicare Part B claims is made by the United States through CMS. CMS, in turn, contracts with fiscal intermediaries to administer and pay Medicare Part B claims from the Medicare Trust Fund. 42 U.S.C. § 1395(u). In this capacity, the fiscal intermediaries act on behalf of CMS. 42 C.F.R. § 421.5(b). Separate payments are made for each CPT procedural code listed on the Medicare Part B claims.

22.     Reimbursement for Medicare Part C claims is made by the United States through CMS. CMS makes fixed monthly payments to each Medicare Choice organization for each enrolled individual, i.e., a capitated payment.

23.     Reimbursement for Medicare Part D claims is made by the United States through CMS. CMS reimburses the insurance plans for a percentage of its payments for prescription drugs.

24.     In order to receive Medicare funds, enrolled suppliers, including the

Clinic, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the states.

25.     Among the rules and regulations which enrolled suppliers, including Defendants, agree to follow are to: (a) bill Medicare for only those covered services which are medically necessary; (b) not bill Medicare for any services or items which were not performed or delivered in accordance with all applicable policies, nor submit false or inaccurate information relating to provider costs or services; (c) not engage in any act or omission that constitutes or results in over-utilization of services; (d) be fully licensed and/or certified under the applicable state and federal laws to perform the services provided to recipients; (e) comply with state and federal statutes, policies and regulations applicable to the Medicare Program; and (f) not engage in any illegal activities related to the furnishing of services to recipients.

26.     Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* establishes Medicaid, a federally assisted grant program for the States. Medicaid enables the States to provide medical assistance and related services to needy individuals. CMS administers Medicaid on the federal level. Within broad federal rules,

however, each state decides who is eligible for Medicaid, the services covered, payment levels for services and administrative and operational procedures.

27.     At all times relevant to this Complaint, the United States provided funds to the States through the Medicaid program pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* Enrolled providers of medical services to Medicaid recipients are eligible for payment for covered medical services under the provisions of Title XIX of the 1965 Amendments to the Federal Social Security Act.

28.     By becoming a participating provider in Medicaid, enrolled providers agree to abide by the rules, regulations, policies and procedures governing claims for payment, and to keep and allow access to records and information as required by Medicaid. In order to receive Medicaid funds, enrolled providers, together with authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the State.

29.     42 C.F.R. §§ 455 *et seq.*, expressly states that a provider must certify that he is in compliance with all federal and state statutes and regulations in order to receive payment from Medicaid.

30.     TRICARE is a government-funded program that provides medical benefits to retired members of the Uniformed Services and to spouses and children of active duty, retired, and deceased members, as well as reservists who were ordered to active duty for thirty (30) days or longer. The program is administered by the Department of Defense and funded by the federal government.

31.     Medicare, Medicaid, and TRICARE are hereinafter collectively referred to as "Government Insurance."

### ANTI-KICKBACK STATUTE

32.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), arose out of Congressional concern that if those who influence healthcare decisions were allowed to have a financial stake in selection of healthcare goods and services, their judgment might be tainted, resulting in goods and services being provided that are medically unnecessary, of poor quality, or even harmful.

33.     To protect the integrity of government programs, in 1972 Congress enacted a per se prohibition against the payment of kickbacks in any form, regardless of whether the particular kickback gave rise to overutilization or poor quality of care, strengthening that statute in 1977 and again in 1987. See Social Security Amendments of 1972, Pub. L. No. 92-603, §§ 242(b) and (c); 42 U.S.C. §

1320a-7b, Medicare-Medicaid Antifraud and Abuse Amendments, Pub. L. No.

95-142; Medicare and Medicaid Patient and Program Protection Act of 1987, Pub.

L. No. 100-93.

34.     Among other provisions, the AKS makes criminal certain types of

remunerative arrangements:

> (b) Illegal remunerations.
>
> (1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—
>
>> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>>
>> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $ 25,000 or imprisoned for not more than five years, or both.
>
> (2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
>> (A) to refer an individual to a person for the

> furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>
> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $ 25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320a-7b.

35.    Compliance with the Anti-Kickback Statute is material to claims for payment from Government Insurance.

36.    For example, as part of the CMS-855O Medicare Enrollment Application, providers must certify that they understand that payment of a claim by Medicare is conditioned upon the claims and the underlying transaction complying with such laws, regulations and program instructions, including but not limited to the federal anti-kickback statute and the Stark Law, and on the provider's compliance with all applicable conditions of participation in Medicare.

### STARK LAW

37.    The Stark Laws are made up three separate provisions which govern physician self-referral for Medicare and Medicaid patients. Under the Stark

Laws, physicians are prohibited from referring a patient to a medical facility in which they have a financial interest. Given the physician's position to benefit from the referral there is both an inherent conflict of interest, and potential for over-utilization of services. In addition, such referrals could limit competition. Stark regulations may be found at 42 C.F.R. § 411.350 through § 411.389.

38.     Stark I was included as a provision in the Omnibus Budget Reconciliation Act of 1989 and barred self-referrals for clinical laboratory services under the Medicare program, effective January 1, 1992. Stark I also included a series of exceptions to accommodate legitimate business arrangements. Stark II, contained in the Omnibus Budget Reconciliation Act of 1993 (OBRA 1993), expanded the restriction to a range of additional health services and applied it to both Medicare and Medicaid.

39.     The Designated Health Services ("DHS") covered by the Stark Laws include clinical laboratory services and radiology and imaging services; radiation therapy and supplies; and outpatient prescription drugs.

40.     Stark broadly defines "referral" to include a request by a physician for an item or service payable under Medicare or Medicaid (including the request by a physician for consultation with another physician as well as any test/procedure ordered/performed by such other physician), or a request by a physician for the

establishment of a care plan to include provision of a DHS.

41.     Compliance with the Stark Law is material to claims for payment from Government Insurance.

## FACTUAL ALLEGATIONS

42.   Since its creation in approximately 2009, UAS has contracted with individual Medical Practices to provide allergy testing and immunotherapy services ("allergy services") for those Medical Practices. Those contracts shall hereinafter be referred to as the "Agreements."

43.     There are different versions of the Agreements, but the core terms and intent are the same: for UAS to provide allergy services at the Medical Practices, including fronting all of the costs and personnel, for a share of the resulting profits.

44.     By the terms of the Agreements, the Medical Practices provide office space for the provision of the allergy services and agree to have a physician on the premises, but after they have prescribed the allergy services and referred them to the UAS technician, they otherwise do not participate in the provision of the allergy services.

45.     The allergy services are provided by UAS technicians who are not physicians, are not employees of the Medical Practice, and who are not registered

with Medicare or the other Government Insurances.

46.     For some older Agreements, UAS (or a billing service on its behalf) submits claims to Government Insurance in the name of the Medical Practices for the allergy services provided to the patients.

47.     For most Agreements, including all of the Agreements managed by Relator Nix, UAS submits a superbill to the Medical Practice for the allergy services performed, and the Medical Practices submit claims for payment to Government Insurance for the allergy services.

48.     Most, if not all, claims for allergy services are billed under CPT codes 95165 (immunotherapy) and 95004 (allergy testing).

49.     CPT Code 95165 is for the preparation of antigens for the allergy shots, not for the injection itself.

50.     Each Medical Practice is then invoiced twice a month by UAS. The Medical Practice then renders payment to UAS pursuant to its Agreement.

*Overbilling and False Billing for Nonphysicians*

51.     In most instances, the providers themselves do not exercise any medical judgment in determining whether a patient should receive allergy services.

52.     Relator Nix, whose job was to train these providers, found that most of them had little to no knowledge or experience with allergy services, and so she

and the other UAS representatives were essentially training them from scratch.

53.    The medical component of the training, however, is limited to identifying patients who could possibly be eligible for allergy services. Once these patients are identified, the providers send them to the UAS technicians, who exercise *their* unqualified judgment to determine whether the patient may receive allergy services.

54.    None of the training is conducted by physicians.

55.    UAS teaches the providers that that any symptoms whatsoever that could be associated with allergies warrant an allergy test.

56.    In addition to physician referrals, as part of its Agreement with the Medical Practices, UAS is given access to patient charts so that it can search for patients who may be eligible for allergy services.

57.    UAS trains the providers to give every patient a "chart update", i.e., a questionnaire from which the provider could determine whether to send the patient to the UAS technician without having to exercise any medical judgment whatsoever.

58.    If the provider does not routinely give out chart updates, UAS technicians will do so, and even discuss treatment options with patients in the waiting room.

59.    The technicians wear scrubs so that they appear to be a member of the

Medical Practice.

60.     It is never disclosed to the patients that the allergy services are being provided by a separate entity and not the patient's healthcare provider.

61.     Contrary to the language of the Agreements, the providers do not participate in or supervise the evaluation or determination conducted by the technician.

62.     If the technician determines that allergy services are appropriate, the technician informs the provider, who then orders the allergy services.

63.     The technician, not the provider, educates the patients about the allergy services, including discussing the risks.

64.     If the patient declines the allergy services, the technician follows up with the patient on future office visits, or sometimes even calls them at home, to recommend testing.

65.     Such communications are misleading to the patients, who believe that their regular provider is recommending testing and/or treatment, because they have no reason to believe that the technician is not an employee or agent of the Medical Practice.

66.     The Medicare Benefit Policy Manual, Chapter 15, § 50.4.4.1 states that payment may only be made for a reasonable supply of antigens if they "are

prepared by a physician who is a doctor of medicine or osteopathy…."

67.     By billing under the Medical Practice and the physician's name, even though UAS nonphysician technicians are independently providing the allergy services, the Medical Practices and UAS are falsely billing Government Insurance.

68.     The Agreements state that the parties intend that the allergy services are provided "incident to" the professional services of the physicians as that term is used under Medicare billing guidelines, meaning that the physician is providing direct supervision of the services being rendered.

69.     Claims for services performed "incident to" must include a modifier because Government Insurance pays physicians a higher rate than nonphysicians. For example, Medicare pays 85% of the Medicare Physician Fee Schedule when a nonphysician performs the procedure.

70.     Upon information and belief, the Medical Practices do not indicate on the claims to Government Insurance that a technician—and not the physician— performed the allergy services, rendering the claims false.

71.     Medicare Benefit Policy Manual, Chapter, 15, § 60A states that "[t]o be covered incident to the services of a physician or other practitioner, services and supplies must be… commonly rendered without charge or included in the

45

physician's bill…."

72.     Medicare Benefit Policy Manual, Chapter, 15, § 60.1A states that "[t]o be covered, supplies, including drugs and biologicals, must represent an expense to the physician or legal entity billing for the services or supplies. For example, where a patient purchases a drug and the physician administers it, the drug is not covered."

73.     Medicare Benefit Policy Manual, Chapter, 15, § 60.1B states that "the patient's financial liability for the incident to services or supplies is to the physician or other legal entity billing and receiving payment for the services or supplies. Therefore, the incident to services or supplies must represent an expense incurred by the physician or legal entity billing for the services or supplies."

74.     As discussed below, UAS provides all of the staff and supplies, including the antigens, at no cost to the Medical Practice.

75.     In fact, the Agreements explicitly bar the Medical Practices from purchasing antigens or other supplies and equipment related to allergy testing and treatment directly from UAS's vendors or suppliers while the Agreement is operative.

76.     Because allergy services do not represent an expense to the billing

Medical Practice, "incident to" claims for the allergy services are false.

77.     Moreover, certain state Medicaid programs will not reimburse for certain allergy services provided "incident to" where the individual providing the services is not an employee of the Medical Practice. Such state programs include but are not limited to Arizona, California, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Missouri, Minnesota, North Carolina, New Jersey, Nevada, Oklahoma, Rhode Island, South Carolina, Tennessee, Texas, and Virginia.

78.     For example, the Arizona Medicaid Fee-For-Service Provider Manual, Chapter 10, does not allow "pass-through billing," where a physician pays the laboratory for allergy tests and then bills Medicaid for those same tests.

79.     Similarly, Georgia Medicaid' Policies and Procedures for Physician Services 601.1B limits billing to the condition that "[t]he person performing the services must be a salaried employee of the physician, or of the physician's group practice as defined below; **physicians may not bill for the services of independent contractors**" (emphasis added).

80.     Claims submitted by a Medical Practice for allergy services provided by UAS technicians who are not employees of the Medical Practice, to states whose Medicaid programs do not reimburse for same, are false.

*False Billing for Preparing Multidose Vials of Antigens*

81.     CPT procedure code 95165 is used to report preparation of multiple dose vials of non-venom antigens.

82.     In establishing the practice expense (PE) component for mixing a multidose vial of antigens, CMS observed that "the most common practice was to prepare a 10 cc vial; we also observed that the most common use was to remove aliquots with a volume of 1 cc." Medicare Claims Processing Manual Chapter 12, Section 200. Based on these observations, CPT code 95165 defines a dose as a one-cc aliquot from one multidose vial.

83.     Medicare billing guidelines direct that when billing code 95165, a physician who is going to administer immunotherapy to a patient first determines **prospectively** how many doses will be provided, and this determines the number of doses to billed (up to ten). Notably, the billed amount is **not** adjusted based on what is actually administered. Rather, "The physician is to 'identify the number of doses scheduled when the vial is provided.' This means that in cases where the patient actually gets more doses than originally anticipated (because dose amounts were decreased during treatment) and in cases where the patient gets fewer doses (because dose amounts were increased), no change is to be made in the billing." *Id*.

84.     Providers are to correctly report the number of 1 cc doses being prepared **up to ten**, but may only bill Medicare for a **maximum of 10 doses per vial**.

85.     In cases where a multidose vial is used for more than 10 doses, the provider may not bill Medicare for preparing more than 10 doses per vial. This is because the practice's expense for the actual antigen has been paid through reimbursement for the first 10 doses, and the added costs for clinical staff and supplies are *de minimus*.

86.     For example, if a practice has a patient with a severe sensitivity to an allergen, such that he can only tolerate .5cc of the antigen, the practice should dilute the antigen accordingly, which would yield 20 (rather than ten) actual doses for that particular patient. However, the practice would only bill for 10 doses, which would fully compensate the practice for the cost of the 10 cc vial of antigen.

87.     Thus, CPT 95165 is focused on the preparation of the vials for the patient, not the number of doses administered to a patient.

88.     State Medicaid programs have similar limitations. For example, Florida Medicaid regulations state that "**preparation** of a multiple allergen vial may be reimbursed only once per treatment cycle."  Illinois Medicaid regulations state that that "allergenic extract should only be billed when each new vial of antigen

49

is **prepared**."

89.     UAS's billing guidelines run afoul of billing guidelines for CPT code 95165 by instructing participating physicians to bill multiple times for the same act – mixing the patient's dosage – even though the act itself occurs only once (or, in the case of patients receiving both an airborne and mold antigen, twice).

90.     Specifically, UAS technicians were instructed to mix the two maintenance vials (one for airborne allergens, one for mold) and then make 6 dilutions, leading to increasingly low ratios of antigen, beginning with 1:1 and ending at a clinically worthless low dose of 1:1,000,000.

91.     UAS then distributes three sets of product, each containing 4 (5ml) vials, billing for 20 doses each time.  Finally, UAS distributes and bills the 10 doses for which it is appropriate to bill.

92.     At the end of this process, UAS has actually billed the government for 70 doses when they should only have billed for 10.

93.     To avoid detection, the bills are submitted over a number of days; specifically, a new bill is submitted each time the patient finishes the previous set of vials.

94.     UAS then provides a superbill for these bills to the Medical Practices, who are specifically instructed to bill for this service under CPT code 95165. However,

this superbill is generated each time that the antigen is dispensed to the patient, rather than only once when the vials are prepared.

95.     In other words, under UAS's guidelines and instructions, the Medical Practices are billing repeatedly for a physician service which can only be performed once - on the day the extracts are prepared.

96.     By repeatedly using the 95165 code, the provider is representing to the payor that there was another, separate event where the physician supervised the preparation of an extract. Such physician supervision is not required for **dispensing** pre-mixed vials, and it is improper to bill under CPT code 95165 for this service.

97.     Compounding this fraud, UAS recommends submitting multiple subsequent charges until the maximum allowed by the patient's insurance is complete – even when no doses are mixed and no vials are even dispensed.

98.     In fact, the physician is not supervising anything and the UAS technician is not preparing any vials that would justify use of 95165.

99.     While the number of doses billed and the timing of billing varies by insurance type, Medical Providers and UAS consistently use the same code and repeatedly bill everyone for physician services that are not provided.

100.    For example, to reach the maximum doses permitted by Georgia

Medicaid, the UAS technician creates a superbill which generates a claim from the physician's office ten times over ten days for the provision of the same service – preparing vials for the patient with proper dilutions of antigens. UAS guidelines specify that the claims will be sent out on the date the extracts are made (Date of Service) and then daily for the next nine days.

101.    Likewise, Oklahoma Medicaid is billed 8 times for 40 units each time. UAS billing guidelines provide: "The initial claim will be for the date of service the meds were made, each subsequent claim should have a date of service plus one for the second claim, plus two for the third claim."

102.    Similarly, Texas Medicaid is billed twice for the same treatment set, one bill going in for 160 units on the date the medications are actually made, and the second on the date the medications are started (typically the next day).

103.    In each of these instances, UAS and the Medical Practices are falsely billing multiple times for the same service, sometimes months after it has occurred.

104.    Furthermore, billing multiple times under CPT code 95165 in this fashion obscures the fact that for each patient, UAS may be using a single vial well beyond the ten doses that are permissible billing.

*AKS and Stark Violations*

105.    The Agreements incentivize the Medical Practices to refer patients to UAS for allergy services by granting them, in most instances, 30%-40% of the resulting billing for each referral.

106.    UAS also offers Agreements under which the Medical Practices pay to UAS a fixed fee for each allergy test and the preparation and provision of antigens for allergen immunotherapy, according to a fee schedule.

107.    Some Agreements include "tiered" rates.

108.    UAS provides "all supplies and equipment necessary to provide the [Allergy] Services, including without limitation, (i) allergy scratch test supplies and equipment, (ii) needles and syringes used in UAL-administered injections, (iii) all supplies and equipment used in formulating and mixing antigens, and (iv) labels, boxes, etc. necessary for identifying antigen vials and boxes."

109.    UAS provides "all personnel necessary to provide the Services… including, without limitation, one lab technician trained in allergy testing and immunotherapy…. for up to forty hours per week," and additional lab technicians if the Medical Practice averages more than three referrals per day.

110.    UAS also generally provides up to ten free allergy tests for doctors and nurses as incentives.

111.    The Medical Practices, in turn, provide little more than free office space to

UAS. UAS's Agreements require that the Medical Practices provide space within its premises for UAS to operate, but does not define the size of the space (excepting that it be at least 150 square feet) or fair market value for the space.

112.    In other words, UAS provides Medical Practices with the opportunity to bill Government Insurance, at no risk or cost to the Medical Practices, in exchange for referrals and space to operate.

113.    Such an Agreement, with no consideration for fair market value and which is entirely dependent on the volume of patient referrals, violates the Anti-Kickback Statute and Stark Law.

114.    For most, if not all, Agreements signed through about mid-2013, Medical Practices pay to UAS a percentage of the collections received for services billed for the allergy services, usually between 60% and 70%.

115.    For example, on December 14, 2009, UAS signed an Agreement with these terms with Family Medicine & Urgent Care ("FMUC"), a Texas physician's group, to provide allergy services on FMUC's premises in exchange for 60% of the collections for allergy services.

116.    Nick Hollis was signatory to this Agreement on behalf of UAS.

117.    Attached hereto as Exhibit A is a list of sample claims submitted to Medicare and Medicaid for allergy services performed by UAS for patients at

FMUC, including the test dates, CPT codes billed, and amounts paid for each claim.

118.     All of the claims are false because they violate the Anti-Kickback Statute and Stark Law.

119.     All of the claims that were submitted to Medicaid are also false because Texas Medicaid does not permit reimbursement for services provided incident-to.

*Proof of Intent*

120.     UAS provides seminars and training materials to the Medical Practices to convince them to refer more patients to UAS for allergy services.

121.     Some of the seminars and training materials that UAS gives to Medical Practices includes breakdowns of how much Government Insurance will pay the Medical Practice for referring a patient to UAS for allergy services and how much money the Medical Practice could make in total if it referred a certain number of patients for allergy tests and/or immunotherapy treatments.

122.     In other words, the seminars are not only geared towards ensuring that the Medical Practices refer patients who may benefit medically from allergy services, but also towards ensuring that the Medical Practices know they can increase profits by referring patients to UAS.

123. UAS also tracks the number of referrals that each of the individual doctors at each Medical Practice gives to UAS, so that it can market its services to those individual doctors.

124. UAS also tracks which diagnosis codes the doctors are billing under and how many patients are referred for allergy services under each diagnosis code, so that it can market its services and persuade the Medical Practices to increase their referrals of patients under those codes.

125. For example, Relator Nix and account manager Leon "Beau" Palmer gave a PowerPoint presentation at Jacksonville Medical Clinic (Jacksonville, AR), including the clinic's physicians, UAS regional account manager Tamara Tatum, and Jeff Clarady, who would soon thereafter replace Tatum when she was promoted to Business Development Manager.

126. Palmer's slides listed each doctor from that practice, the number of ICD-9 diagnoses they each had from July 2013-September 2013, how many of those patients had been referred for allergy services, how many of those patients had actually received allergy services, and the total payout that Jacksonville Medical had received for those patients from Medicare, Medicaid, Tricare/Champus, and commercial insurance.

127. Palmer's presentation then set a "goal" for Jacksonville Medical Clinic of

65 patients to receive immunotherapy per month, which would result in increased compensation to approximately $1,692,000 per year.

128.   UAS gives its technicians a quota (usually monthly) for the number of allergy services that they are expected to meet. The technicians are reprimanded, and may be terminated, if they fail to meet the quota.

129.   These quotas are sometimes given to the Medical Practice as well, with threats that UAS will terminate the contract and cease to offer its services if it does not receive a sufficient number of referrals.

130.   Relator Nix routinely observed account managers tell providers that they needed fifteen or more referrals every month.

131.   For example, the UAS technicians at Hillcrest Family Practice (Simpsonville, SC) had a quota of 13 allergy tests for the month of January 2014.

132.   The UAS technicians at Wayne Family Practice Associates, P.C. (Jesup, GA) had a quota of 14 allergy tests for the month of January 2014.

133.   The UAS technicians at Poinsett Family Practice (Greenville, SC) had a quota of 10 allergy tests for the month of January 2014.

134.   The UAS technicians are encouraged to update the Medical Practices as to what their monthly goals are and to encourage referrals to meet those goals.

135.   UAS trains its technicians to request ICD-9 reports from their respective

57

Medical Practices.

136.   The technicians review the reports for patients who had been diagnosed with a condition that would qualify them for allergy testing – such as bronchitis or rhinitis – but who were not referred to the UAS lab.

137.   The technicians then target those patients as potential customers for allergy services.

138.   For example, sometimes the technicians contact the patients and peddle their allergy services to them directly.

139.   Sometimes the technicians review the Medical Practice's patient schedule and note when that patient is returning for a follow-up visit, so that the technicians can market their services to the patient and/or the physician at that time.

140.   Sometimes the technicians leave notes for the physicians so that when the patients return for an office visit, the physician is alerted that the patient was diagnosed with a condition that makes them eligible for allergy services.

141.   When patients are referred to the UAS technicians by the Medical Practice, the technicians always check the patient's insurance status before providing allergy services.

142.   Accordingly, the technicians know or should know whether each patient

is insured by a Government Insurance program.

143.   In October 2013, Accounts Manager Tom Neuman called Relator and told her that one of the Medical Practices he was managing, Cartersville Pediatric Associates (located in Cartersville, Georgia), had received a letter from Georgia Medicaid indicating that the practice had been audited.

144.   The letter from Georgia Medicaid said that it would not pay claims for allergy services that were performed by a third-party provider (e.g., UAS).

145.   Upon information and belief, Georgia Medicaid's letter was premised on regulations that Georgia Medicaid does not reimburse for allergy services billed by a physician but performed by an individual who is not employed by the physician.

146.   Internal Medicine Associates of Waycross, P.C. and other Medical Practices in Georgia received the same or a similar letter from Georgia Medicaid.

147.   The owner of Cartersville Pediatric Associates – Dr. William Payne – alerted Neuman and Account Executive Joe Omer about having received this letter.

148.   Neuman and Omer both reported the receipt and contents of the letter to UAS Senior Management – Tim Clark (VP of Operations and Neuman's direct supevisor), Mike Malec (Regional Director and Omer's direct supervisor), Lynn

Robinson (COO), and Phillip Ramirez (Director of Compliance).

149.    Several weeks later, UAS sent a letter to all of the Georgia-based Medical Practices that UAS was no longer accepting Georgia Medicaid patients.

150.    The letter from UAS said nothing in regards to whether prior billing to Georgia Medicaid for allergy services had been lawful or appropriate.

151.    The letter did not explain why this change had occurred, stating only that all questions should be directed to Phillip Ramirez, UAS Director of Compliance.

152.    After the letter was sent, UAS held a conference call with VP of Operations Tim Clark and Georgia Account Managers Monifa Barrett, Tom Neuman, and Hamiyda Scipio.

153.    During the call, Clark instructed the Georgia Account Managers that they were not to provide Medical Practices with any information regarding the "change" to Medicaid billing, and were to direct all questions about it to Phillip Ramirez.

154.    Barrett, Neuman, and Scipio then called the Georgia-based UAS Clinical Allergy Technicians (the on-site UAS allergy services providers) and relayed the instructions that any and all questions from Medical Practices were to be directed to Phillip Ramirez.

155.    At an October 21, 2013 meeting, Mike Malec, Southeast Regional Director

of Account Executives, told Relator that he suspected there was an issue with UAS's contracts because multiple times after providing a potential customer with an allergy services contract, that physician's legal counsel told the physician, who told Malec, that the terms of the arrangement would render the submission of claims to Government Insurance illegal. Malec raised the issue with his senior management but never received a satisfactory answer.

156.    The next month, during a November 2013 call with Tim Clark, Relator expressed her concerns that UAS was withholding information from the Medical Practices about the legality of UAS's Medicaid billing, but Clark refused to discuss the issue and repeated the party line that all queries from UAS customers should be directed to Phillip Ramirez.

157.    Relator responded to Clark that Ramirez often failed to return calls to the Medical Practices and when he did, he gave vague answers that failed to disclose key information regarding the legality of UAS's billing practices.

158.    On January 10, 2014, Account Executive Joe Omer told Relator that Senior Management, and Mike Malec in particular, had instructed him not to tell any potential customers that Georgia Medicaid would not reimburse for UAS-provided allergy services or that claims for such were false or unlawful.

159.    Omer told Relator that he refused to withhold Medicaid billing

information from the Medical Practices.

160.    Shortly thereafter, Omer was given the option to resign or be terminated.

161.    Omer resigned from UAS in March 2014.

*Retaliation Against Relator*

162.    On January 30, 2014, Relator had a call with Tim Clark during which she expressed her concerns that UAS was withholding information regarding the legality of billing to Medical Practices.

163.    Clark again told her to direct all customers' questions to Phillip Ramirez.

164.    If Relator and other UAS account executives, such as Omer, had been allowed to discuss the legality of Georgia Medicaid billing with the Medical Practices, it likely would have prevented the submission of false claims by those practices.

165.    Approximately one week after this phone call with Clark, on February 7, 2014, UAS terminated Relator's employment.

166.    Prior to termination, Relator had received no verbal or written documentation regarding insufficient job performance.

167.    In fact, Relator had recently been praised by her supervisors for her exemplary job performance.

**COUNT I**
**Violation of 31 U.S.C. § 3729 – False Claims Act**

168.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

169.    As set forth above, each and every Defendant, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented numerous false or fraudulent claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

170.    As set forth above, each and every Defendant, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

171.    As set forth above, each and every Defendant, individually and by and through their agents, officers, and employees, knowingly conspired to defraud the Government by getting a false or fraudulent claim allowed or paid, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(C).

172.    Due to Defendants' conduct, the United States Government has suffered substantial monetary damages.

173.    The United States is entitled to treble damages based upon the amount of damage sustained by the United States as a result of the aforementioned

violations of the False Claims Act, 31 U.S.C. §§ 3729-3733, an amount that will be proven at trial.

174. The United States is entitled to a civil penalty of between $5,500 and $11,000 as required by 31 U.S.C. § 3729(a) for each of the fraudulent claims.

175. Relator is also entitled to reasonable attorney's fees and costs, pursuant to 31 U.S.C. § 3730(d).

## COUNT II
### Violation of O.C.G.A. § 49-4-168.1 - Georgia False Medicaid Claims Act

176. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

177. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and Georgia-based Decatur Pediatric Group, P.A.; Preston Ridge Pediatric Associates, PC; Bi-County Gwinnett Pediatrics, P.C.; Neil R. Nickelsen, D.O.; The Columbus Clinic, P.C.; Pediatric Associates Of Lawrenceville, LLC; Georgia Medical Associates, P.C.; Family Health Care Center, Inc.; Wayne Family Practice Associates, P.C.; Family Practitioners Of Glynn, P.C.; Internal Medicine Associates of Waycross, P.C.; Peter Wrobel, M.D., P.C.; Valdosta Family Medicine Associates, P.C.; Blackshear Family Practice, P.C.; Georgia Medical Treatment Center; North Georgia Internal Medicine, P.C.; Douglas Pediatrics Associates, P.C.; East Cobb Pediatrics And

64

Adolescent Medicine, P.C.; Kennesaw Pediatrics, P.C.; Dunwoody Village Clinic, P.C.; Cartersville Pediatrics Associates, P.C.; North Fulton Internal Medicine Group, P.C.; Pediatric Associates, P.C.; Pediatric Associates of Johns Creek, P.C.; Preston Ridge Pediatric Associates, PC; Airport Clinic, Inc.; Atlanta Medical and Aesthetic Center Inc.; Atlanta Ropheka Medical Center, PC; Atlanta Women's Specialty Group II, LLC; Brian C. Griner, M.D., LLC; Brian K. Nadolne, M.D., P.C.; Community Care, MD, PC; Cumming Pediatric Group, P.C.; Dekalb Medical Center, Inc.; East Metro Internal Medicine, L.L.C.; Greater Atlanta Family Healthcare, LLC; Just for Women, LLC; Life Cycle Pediatrics, LLC; New Millennium Obstetrics and Gynecology, LLC; Physicians Family Medicine of Canton, LLC; Physicians Family Medicine, LLC; Quality Medical Management Services, LLC; Real Health Medical, LLC; Rolf W. Meinhold, M.D., P.C.; Shamil, P.C.; Smokerise Family Medical Association, P.C.; Sy Med LLC; Urgent Care Xpress, L.L.C.; Woodstock Family and Urgent Care; Windermere Medical Clinic; Magnolia Medical Clinic, P.C.; Golden Isles Family Medicine, P.C.; J. Harold Acevedo, M.D., P.C. d/b/a Augusta Pediatrics; Chatham Savannah Medical Group, PC; Iveta Berzinch, M.D., PC d/b/a Pineview Pediatrics; West Augusta Pediatrics, P.C.; Pediatrics at Whitlock, P.C.; Oconee E.N.T. & Cosmetic Surgery Center, P.C.; Norcross Pediatrics and Adolescent Medicine Inc; Intown Primary

65

Care P.C.; Family Medicine Specialists, P.C.; Georgia Medical Associates, P.C.; D. Conrad Harper MD, LLC; Milton Hall Surgical Associates, LLC; Canton Ear Nose & Throat Clinic P.C.; A. Reginald Pilcher, M.D., PC; and Georgia-based John Doe Medical Practices ("Georgia-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Georgia Medicaid program numerous false or fraudulent claims for payment or approval, in violation of O.C.G.A. § 49-4-168.1(a)(1).

178.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Georgia-based Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of O.C.G.A. § 49-4-168.1(a)(2).

179.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Georgia-based Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the State False Medicaid Claims Act, in violation of O.C.G.A. § 49-4-168.1(a)(3).

180.    Due to Defendants' conduct, the State of Georgia has suffered substantial

monetary damages.

181. The State of Georgia is entitled to treble damages based upon the amount of damage sustained by the State of Georgia as a result of the aforementioned violations of the State False Medicaid Claims Act, O.C.G.A. § 49-4-168.1, an amount that will be proven at trial.

182. The State of Georgia is entitled to a civil penalty of between $5,500 and $11,000 as required by O.C.G.A. § 49-4-168.1 for each of the fraudulent claims.

183. Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to O.C.G.A. § 49-4-168.1(i).

## COUNT III
### Violation of California Government Code Section 12651 - California False Claims Act

184. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

185. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and California-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the California Medicaid program numerous false or fraudulent claims for payment or approval, in

violation of Cal. Gov't Code § 12651(a)(1).

186. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and California-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Cal. Gov't Code § 12651(a)(2).

187. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and California-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the California False Claims Act, in violation of Cal. Gov't Code § 12651(a)(3).

188. Due to Defendants' conduct, the State of California has suffered substantial monetary damages.

189. The State of California is entitled to treble damages based upon the amount of damage sustained by the State of California as a result of the aforementioned violations of the Cal. Gov't Code § 12651(a), an amount that will be proven at trial.

190. The State of California is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand

dollars ($11,000) as required by Cal. Gov't Code § 12651(a) for each of the fraudulent claims.

191.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Cal. Gov't Code § 12652(g).

## COUNT IV
### Violation of Colorado Revised Statute § 25.5-4-305 - Colorado Medicaid False Claims Act

192.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

193.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and Colorado-based Aspen Creek Medical Associates, P.C.; Front Range Primary Care Partners, LLC; Brim Healthcare of Colorado, LLC; and Colorado-based John Doe Medical Practices ("Colorado-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Colorado Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(a).

194.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Colorado-based Medical Practices,

individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(b).

195.     As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Colorado-based Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Colorado Medicaid False Claims Act, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(g).

196.     Due to Defendants' conduct, the State of Colorado has suffered substantial monetary damages.

197.     The State of Colorado is entitled to treble damages based upon the amount of damage sustained by the State of Colorado as a result of the aforementioned violations of the Colo. Rev. Stat. § 25.5-4-305(1), an amount that will be proven at trial.

198.     The State of Colorado is entitled to a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000) as required by Colo. Rev. Stat. § 25.5-4-305(1) for each of the fraudulent claims.

199.     Relator is also entitled to reasonable expenses which the court finds to

have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Colo. Rev. Stat. § 25.5-4-306(4).

## COUNT V
### Violation of Delaware Code Title 6, § 12-1201 - Delaware False Claims and Reporting Act

200.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

201.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Delaware-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Delaware Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Del. Code Tit. 6, § 12-1201(a)(1).

202.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Delaware-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Del. Code Tit. 6, § 12-1201(a)(2).

203.    As set forth above, Defendants UAS, James Strader, America Strader,

Larry Smith, John Berberian, Nick Hollis, and Delaware-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Delaware False Claims and Reporting Act, in violation of Del. Code Tit. 6, § 12-1201(a)(3).

204. Due to Defendants' conduct, the State of Delaware has suffered substantial monetary damages.

205. The State of Delaware is entitled to treble damages based upon the amount of damage sustained by the State of Delaware as a result of the aforementioned violations of the Del. Code Tit. 6, § 12-1201(a), an amount that will be proven at trial.

206. The State of Delaware is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by Del. Code Tit. 6, § 12-1201(a) for each of the fraudulent claims.

207. Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Del. Code Tit. 6, § 12-1205.

**COUNT VI**
**Violation of District of Columbia Code § 2-308.02 –**
**District of Columbia False Claims Act**

208. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

209. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and District of Columbia-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the District of Columbia Medicaid program numerous false or fraudulent claims for payment or approval, in violation of D.C. Code § 2-308.02(a)(1).

210. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and District of Columbia-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of D.C. Code § 2-308.02(a)(2).

211. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and District of Columbia-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to defraud the District by getting a false claim allowed or paid by the District, in violation of D.C. Code § 2-308.02(a)(3).

212.    Due to Defendants' conduct, the District of Columbia has suffered substantial monetary damages.

213.    The District of Columbia is entitled to treble damages based upon the amount of damage sustained by the District of Columbia as a result of the aforementioned violations of the D.C. Code § 2-308.14(a), an amount that will be proven at trial.

214.    The District of Columbia is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by D.C. Code § 2-308.02(a) for each of the fraudulent claims.

215.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorneys' fees and costs, pursuant to D.C. Code § 2-381.03(f).

## COUNT VII
### Violation of Fla. Stat. § 68.082 – Florida False Claims Act

216.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

217.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and Florida-based Winter Park

74

Family Practice, LLC; Nadal Pediatrics, PA; and Florida-based John Doe Medical Practices ("Florida-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Florida Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Fla. Stat. § 68.082(2)(a).

218.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Florida-based Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Fla. Stat. § 68.082(2)(b).

219.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Florida-based Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Florida False Claims Act, in violation of Fla. Stat. § 68.082(2)(c).

220.    Due to Defendants' conduct, the State of Florida has suffered substantial monetary damages.

221.    The State of Florida is entitled to treble damages based upon the amount of damage sustained by the State of Florida as a result of the aforementioned

violations of the Fla. Stat. § 68.082(2), an amount that will be proven at trial.

222.   The State of Florida is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by Fla. Stat. § 68.082(2) for each of the fraudulent claims.

223.   Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Fla. Stat. § 68.085.

### COUNT VIII
**Violation of 740 Illinois Compiled Statutes § 175/3 – Illinois False Claims Act**

224.   Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

225.   As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and Illinois-based Deerpath Primary Care, S.C.; Family Medicine Specialists, S.C.; Mirshed Medical Center, S.C.; Northwest Medical Associates S.C.; Robin Snead, M.D., S.C.; and Illinois-based John Doe Medical Practices ("Illinois-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Illinois Medicaid program numerous false or fraudulent claims for payment or approval, in violation of 740

Ill. Comp. Stat. § 175/3(a)(1)(A).

226.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Illinois-based Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Ill. Comp. Stat. § 175/3(a)(1)(B).

227.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Illinois-based Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Illinois False Claims Act, in violation of Ill. Comp. Stat. § 175/3(a)(1)(C).

228.    Due to Defendants' conduct, the State of Illinois has suffered substantial monetary damages.

229.    The State of Illinois is entitled to treble damages based upon the amount of damage sustained by the State of Illinois as a result of the aforementioned violations of the Ill. Comp. Stat. § 175/3(a)(1)(G), an amount that will be proven at trial.

230.    The State of Illinois is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by Ill. Comp. Stat. § 175/3(a)(1)(G) for each of the

fraudulent claims.

231.     Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Ill. Comp. Stat. § 175/4(d)(1).

## COUNT IX
### Violation of Indiana Code § 5-11-5.5-2 – Indiana False Claims and Whistleblower Protection Act

232.     Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

233.     As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Indiana-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Indiana Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Ind. Code § 5-11-5.5-2(b)(1).

234.     As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Indiana-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements to obtain payment or approval of a false claim from the state, in violation of Ind.

78

Code § 5-11-5.5-2(b)(2).

235.   As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Indiana-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Indiana False Claims and Whistleblower Protection Act, in violation of Ind. Code § 5-11-5.5-2(b)(7).

236.   Due to Defendants' conduct, the State of Indiana has suffered substantial monetary damages.

237.   The State of Indiana is entitled to treble damages based upon the amount of damage sustained by the State of Indiana as a result of the aforementioned violations of the Ind. Code § 5-11-5.5-2(b), an amount that will be proven at trial.

238.   The State of Indiana is entitled to a civil penalty of not less than five thousand dollars ($5,000) as required by Ind. Code § 5-11-5.5-2(b) for each of the fraudulent claims.

239.   Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Ind. Code § 5-11-5.5-6(a).

## COUNT X
### Violation of Iowa Code § 685.2 – Iowa False Claims Act

240.   Relator hereby incorporates and realleges herein all other paragraphs as if

fully set forth herein.

241.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Iowa-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Iowa Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Iowa Code § 685.2(1)(a).

242.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Iowa-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Iowa Code § 685.2(1)(b).

243.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Iowa-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Iowa False Claims Act, in violation of Iowa Code § 685.2(1)(c).

244.    Due to Defendants' conduct, the State of Iowa has suffered substantial monetary damages.

245.    The State of Iowa is entitled to treble damages based upon the amount of damage sustained by the State of Indiana as a result of the aforementioned violations of the Iowa Code § 685.2(1), an amount that will be proven at trial.

246.    The State of Iowa is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by Iowa Code § 685.2(1) for each of the fraudulent claims.

247.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Iowa Code § 685.3(4).

## COUNT XI
### Violation of Louisiana Revised Statutes Annotated § 46:438.3 – Medical Assistance Programs Integrity Law

248.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

249.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and Louisiana-based Acadiana Family Practice Associates, L.L.P.; Agape Ear, Nose, and Throat Clinic, APMC; Allen L. Spires, L.L.C.; Baton Rouge General Physicians Medical Group, L.L.C.; Baton Rouge General Physicians, Inc.; Chaudhry Clinic, LLC; Billy A. May, Jr,

MD APMC; Brian Granger, M.D. APMC; Mirza A. Beg, MD APMC; Yaw Twum-Antwi, M.D.; Family Medicine Specialists, L.L.C.; Family Practice Center of Sulphur, LLC; Goodwood Primary Care Clinic, LLC; Jacobs Family Medical Clinic Inc.; Joseph M. Gautreaux, III., M.D. APMC; Kelly L. Cobb, M.D., APMC; Lewis C. Cummings, M.D., APMC; Mayo Medical Clinic, Inc.; Optimal Health Out-Patient Clinic, APMC; Pediatric Medical Clinic, Inc.; Richard B. Feucht, II, M.D., L.L.C.; Kevin T. Schlamp, M.D., L.L.C.; Slidell Internal Medicine Clinic, L.L.C.; Southern Pediatric Clinic, Inc. APMC; Varnado Family Practice, LLC; Warren J. Degatur Jr., M.D., APMC; Youngsville Medical Clinic, L.L.C.; The Pediatric Center; Natchitoches Medical Specialists; and Louisiana-based John Doe Medical Practices ("Louisiana-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Louisiana Medicaid program numerous false or fraudulent claims for payment or approval, in violation of La. Rev. Stat. Ann. § 46:438.3(A).

250. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Louisiana-based Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements

material to numerous false claims, in violation of La. Rev. Stat. Ann. § 46:438.3(B).

251.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Louisiana-based Medical Practices, by and through their agents, officers and employees, conspired to defraud, or attempt to defraud, the Louisiana medical assistance programs (as defined by the statute) through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim, in violation of La. Rev. Stat. Ann. § 46:438.3(D).

252.    Due to Defendants' conduct, the State of Louisiana has suffered substantial monetary damages.

253.    The State of Louisiana is entitled to treble damages based upon the amount of damage sustained by the State of Louisiana as a result of the aforementioned violations of the La. Rev. Stat. Ann. § 46:438.6(B)(2), an amount that will be proven at trial.

254.    The State of Louisiana is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by La. Rev. Stat. Ann. § 46:438.6(C)(1)(a) for each of the fraudulent claims, plus interest pursuant to La. Rev. Stat. Ann.

§ 46:438.6(C)(1)(b).

255.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to La. Rev. Stat. Ann. § 46:438.6(D).

## COUNT XII
### Violation of Maryland Code Annotated § 2-602 – Maryland False Health Claims Act

256.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

257.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Maryland-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Maryland Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Md. Code Ann. § 2-602(a)(1).

258.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Maryland-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Md. Code Ann. § 2-602(a)(2).

259.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Maryland-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Maryland False Health Claims Act, in violation of Md. Code Ann. § 2-602(a)(3).

260.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Maryland-based John Doe Medical Practices, by and through their agents, officers and employees, knowingly made other false or fraudulent claims against a State health plan or a State health program, in violation of Md. Code Ann. § 2-602(a)(9).

261.    Due to Defendants' conduct, the State of Maryland has suffered substantial monetary damages.

262.    The State of Maryland is entitled to treble damages based upon the amount of damage sustained by the State of Maryland as a result of the aforementioned violations of the Md. Code Ann. § 2-602(b)(1)(ii), an amount that will be proven at trial.

263.    The State of Maryland is entitled to a civil penalty of not more than ten thousand dollars ($10,000) as required by Md. Code Ann. § 2-602(b)(1)(i) for each of the fraudulent claims.

264.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Md. Code Ann. § 2-603(b)(2)(ii) and § 2-605(a).

## COUNT XIII
### Violation of Minnesota Statute § 15C.02 – Minnesota False Claims Act

265.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

266.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Minnesota-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Minnesota Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Minn. Stat. § 15C.02(a)(1).

267.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Minnesota-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Minn. Stat. § 15C.02(a)(2).

268.    As set forth above, Defendants UAS, James Strader, America Strader,

Larry Smith, John Berberian, Nick Hollis, and Minnesota-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Minnesota False Claims Act, in violation of Minn. Stat. § 15C.02(a)(3).

269.    Due to Defendants' conduct, the State of Minnesota has suffered substantial monetary damages.

270.    The State of Minnesota is entitled to treble damages based upon the amount of damage sustained by the State of Minnesota as a result of the aforementioned violations of the Minn. Stat. § 15C.02(a), an amount that will be proven at trial.

271.    The State of Minnesota is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by Minn. Stat. § 15C.02(a) for each of the fraudulent claims.

272.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Minn. Stat. § 15C.12.

## COUNT XIV
### Violation of Nevada Revised Statute Annotated § 357.040 – Submission of False Claims to State or Local Government

273.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

274.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Nevada-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Nevada Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Nev. Rev. Stat. Ann. § 357.040(1)(a).

275.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Nevada-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Nev. Rev. Stat. Ann. § 357.040(1)(b).

276.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Nevada-based John Doe Medical Practices, individually and by and through their agents, officers and employees, were beneficiaries of an inadvertent submission of a false claim and, after discovering the falsity of the claim, failed to disclose the falsity to the State or

political subdivision within a reasonable time, in violation of Nev. Rev. Stat. Ann. § 357.040(1)(h).

277.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Nevada-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Nevada Submission of False Claims to State or Local Government (as defined in the statute), in violation of Nev. Rev. Stat. Ann. § 357.040(1)(i).

278.    Due to Defendants' conduct, the State of Nevada has suffered substantial monetary damages.

279.    The State of Nevada is entitled to treble damages based upon the amount of damage sustained by the State of Nevada as a result of the aforementioned violations of the Nev. Rev. Stat. Ann. § 357.040(2)(a), an amount that will be proven at trial.

280.    The State of Nevada is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by Nev. Rev. Stat. Ann. § 357.040(2)(c) for each of the fraudulent claims.

281.    Relator is also entitled to reasonable expenses which the court finds to

have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Nev. Rev. Stat. Ann. § 357.180.

## COUNT XV
### Violation of New Jersey Revised Statute § 2A:32C-3 – New Jersey False Claims Act

282. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

283. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and New Jersey-based Main Street Medical Associates; The Center For Adult Medicine, P.A.; Summit Medical Arts Associates, LLC; Ear, Nose & Throat Specialists of Morristown; Heritage Family Medicine; Gigliotti Family Medicine; Stafford Medical, P.A.; Woodbury Pediatrics; Sicklerville Internal Medicine; Atrium Pediatrics; Pediatric & Adult Medicine; Sunset Road Medical Associates, P.A.; Family Medicine Associates Williamstown; Family Medicine Associates Vineland; Cherry Hill Pediatrics; Family Medicine Mt. Laurel; Lerch & Amato Pediatrics; Medford Station; Heights Primary Care; Family Practice Associates at Washington, P.A.; Berlin Medical Associates; Berlin Medical Associates at Winslow; Aroesty ENT; Steinbaum Levine Associates, LLC; Pediatric Arts; Aygen Pediatrics & Adult Care; Montville Practice Associates, P.A.; Scotch Plains Pediatrics; Depersia,

90

Chernoff & Ocasio, P.C.; Health Med Associates, P.C.; and New Jersey-based John Doe Medical Practices ("New Jersey-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly presented or caused to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval, in violation of N.J. Rev. Stat. § 2A:32C-3(a).

284. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and New Jersey-based Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State, in violation of N.J. Rev. Stat. § 2A:32C-3(b).

285. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and New Jersey-based Medical Practices, by and through their agents, officers and employees, conspired to defraud the State by getting a false or fraudulent claim allowed or paid by the State, in violation of N.J. Rev. Stat. § 2A:32C-3(c).

286. Due to Defendants' conduct, the State of New Jersey has suffered substantial monetary damages.

287.    The State of New Jersey is entitled to treble damages based upon the

amount of damage sustained by the State of New Jersey as a result of the

aforementioned violations of the N.J. Rev. Stat. § 2A:32C-3, an amount that will

be proven at trial.

288.    The State of New Jersey is entitled to a civil penalty of not less than five

thousand five hundred dollars ($5,500) and not more than eleven thousand

dollars ($11,000) as required by N.J. Rev. Stat. § 2A:32C-3 for each of the

fraudulent claims.

289.    Relator is also entitled to reasonable expenses which the court finds to

have been necessarily incurred and reasonable attorney's fees and costs,

pursuant to N.J. Rev. Stat. § 2A:32C-8.

## COUNT XVI
**Violation of New Mexico Statute § 27-14-2 – New Mexico Medicaid False
Claims Act**

290.    Relator hereby incorporates and realleges herein all other paragraphs as if

fully set forth herein.

291.    As set forth above, Defendants UAS, James Strader, America Strader,

Larry Smith, John Berberian, Nick Hollis, and New Mexico-based John Doe

Medical Practices, individually and by and through their agents, officers, and

employees, knowingly presented, or caused to be presented to the New Mexico

Medicaid program numerous false or fraudulent claims for payment or approval, in violation of N.M. Stat. § 27-14-4(A).

292.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and New Mexico-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, presented, or caused to be presented, to the state a claim for payment under the medicaid program knowing that the person receiving a medicaid benefit or payment is not authorized or is not eligible for a benefit under the Medicaid program, in violation of N.M. Stat. § 27-14-4(B).

293.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and New Mexico-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, made, used or caused to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false, in violation of N.M. Stat. § 27-14-4(C).

294.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and New Mexico-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to defraud the State by getting a false or fraudulent claim allowed or

paid under the Medicaid program knowing such claim is false or fraudulent, in violation of N.M. Stat. § 27-14-4(D).

295. Due to Defendants' conduct, the State of New Mexico has suffered substantial monetary damages.

296. The State of New Mexico is entitled to treble damages based upon the amount of damage sustained by the State of New Jersey as a result of the aforementioned violations of the N.M. Stat. § 27-14-4, an amount that will be proven at trial.

297. Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to N.M. Stat. § 27-14-9.

**COUNT XVII**

**Violation of North Carolina General Statute § 1-607 – North Carolina False Claims Act**

298. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

299. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and North Carolina-based North Whiteville Urgent Care and Family Practice, PA; Holly Ridge Healthcare, PA; Northside Urgent Care, Inc.; ABC Pediatrics of Dunn, PA; Family Wellness Clinic,

P.A.; Eastover Family Care, P.C.; Eastern Carolina Medical Center, P.C.; Pelican Family Medicine, P.A.; Palladium Primary Care, PA; Friendly Urgent Care, Inc.; Caromed Inc.; Carolina Family Medicine & Urgent Care, P.A.; Spear Clinic, P.A.; Eagle Medical Center, PC; Triad Internal Medicine Associates, P.A.; Freedom Medical Clinic & Urgent Care, P.A.; Anson Pediatrics, P.C.; Bland Clinic, P.A.; Gaffney Health Services, P.A.; Immanuel Family Practice, P.A.; Carolina Internal Medicine Associates, P.A.; Roxboro Family Medicine & Immediate Care, P.C.; NC Pediatric Associates, PLLC; Cary Family Practice & Walk-In Clinic, P.C.; North State Medical Center, P.A.; Holly Springs Pediatrics, PLLC; Capital Physicians Group, PA; Durham Family Medicine, PA; Medaccess Urgent Care, PLLC; Alliance Family Health Group, LLC; North Raleigh Pediatric Group, P.A.; Waverly Primary Care, PLLC; Hickory Family Practice Associates, P.A.; Lamond Family Medicine, PLLC; Hazelwood Family Medicine, PLLC; WNC Hypertension & Wellness Center; Family Care of Fairview, P.A.; Fairbrook Medical Clinic, P.A.; Rainbow Pediatrics, P.A.; Biltmore Family Medicine, PLLC; Lakeview Urgent Care & Family Clinic, Inc.; Southeastern Medical Clinic Grays Creek; Raeford Family Care Center, LLC; Allergy Clinics Of North Carolina, P.C.; Carolina Urgent & Family Care, P.A.; Cape Fear Family Medical Care, P.A.; West Primary Care, Inc.; Trinity Urgent Care & Family Practice, LLC; Calvary Internal Medicine, PC;

Cornelius F. Cathcart, Pediatrics, PA; Kernodle Clinic, Inc.; Fayetteville Urgent Care and Family Medicine, PA; First Care Medical Clinic, Inc.; Hope Mills Urgent Care and Medical Clinic, P.L.L.C.; Physical Medicine and Rehabilitation Center, PLLC; Randolph Primary Care, PA; Randolph Pulmonary & Sleep Clinic, PLLC; Gibbons Family Medicine, P.A.; Vickery Family Medicine, PLLC; Roxboro Med Access PLLC; Southeastern Regional Physician Services; and North Carolina-based John Doe Medical Practices ("North Carolina-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the North Carolina Medicaid program numerous false or fraudulent claims for payment or approval, in violation of N.C. Gen. Stat. § 1- 607(a)(1).

300.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and North Carolina-based Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of N.C. Gen. Stat. § 1-607(a)(2).

301.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and North Carolina-based Medical Practices, by and through their agents, officers and employees, conspired to commit a

violation of the North Carolina False Claims Act, in violation of N.C. Gen. Stat. § 1-607(a)(3).

302.    Due to Defendants' conduct, the State of North Carolina has suffered substantial monetary damages.

303.    The State of North Carolina is entitled to treble damages based upon the amount of damage sustained by the State of North Carolina as a result of the aforementioned violations of the N.C. Gen. Stat. § 1-607(a), an amount that will be proven at trial.

304.    The State of North Carolina is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by N.C. Gen. Stat. § 1-607(a) for each of the fraudulent claims.

305.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to N.C. Gen. Stat. § 1-610.

## COUNT XVIII
### Violation of Oklahoma Statute Title 63, § 5053.1 – Oklahoma Medicaid False Claims Act

306.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

97

307.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and Oklahoma-based Gilbert Medical Center, PLLC; Seminole Medical Clinic, LLP; Urgent Care Clinic of Atoka, PC; Aquilo Health Company, PC; Noel R. Williams, M.D., P.C.; Oklahoma City Gynecology and Obstetrics, LLC; Baker Fore Business Associates, Inc.; Charles K. Jones, M.D.; D Guin Johnson MD Inc; Dennis E. Sandler, M.D.; Family Medical and Urgent Care Center, LLC; Fountain Park Family Physicians; Integrative Medical Solutions, PLLC; Kelley Family, L.L.C.; Lisa J. Wasemiller-Smith, M.D., Inc.; Mark Oatman, M.D., P.L.L.C.; McMahan Family, L.L.C.; Midwest Medical Group, PLLC; Peter Bullock, M.D., P.C.; Rodney J. Miles, M.D., Inc.; South Moore Medical Clinic, PC; Southern Plains Medical Center, P.C.; STATCare Clinics of Green Country, L.L.C.; Oklahoma City Ear, Nose & Throat Clinic, P.C. and Oklahoma-based John Doe Medical Practices ("Oklahoma-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Oklahoma Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Okla. Stat. tit. 63, § 5053.1(B)(1).

308.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Oklahoma-based Medical

Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements to get a false or fraudulent claim paid or approved by the state, in violation of Okla. Stat. tit. 63, § 5053.1(B)(2).

309.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Oklahoma-based Medical Practices, by and through their agents, officers and employees, conspired to defraud the state by getting a false or fraudulent claim allowed or paid, in violation of Okla. Stat. tit. 63, § 5053.1(B)(3).

310.    Due to Defendants' conduct, the State of Oklahoma has suffered substantial monetary damages.

311.    The State of Oklahoma is entitled to treble damages based upon the amount of damage sustained by the State of Oklahoma as a result of the aforementioned violations of the Okla. Stat. tit. 63, § 5053.1(B), an amount that will be proven at trial.

312.    The State of Oklahoma is entitled to a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000) as required by Okla. Stat. tit. 63, § 5053.1(B) for each of the fraudulent claims.

313.    Relator is also entitled to reasonable expenses which the court finds to

have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Okla. Stat. tit. 63, § 5053.4.

## COUNT XIX
### Violation of Rhode Island General Laws § 9-1.1-3 – Rhode Island False Claims Act

314. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

315. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Rhode Island-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Rhode Island Medicaid program numerous false or fraudulent claims for payment or approval, in violation of R.I. Gen. Laws § 9-1.1-3(a)(1).

316. As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Rhode Island-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of R.I. Gen. Laws § 9-1.1-3(a)(2).

317. As set forth above, Defendants UAS, James Strader, America Strader,

Larry Smith, John Berberian, Nick Hollis, and Rhode Island-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Rhode Island False Claims Act, in violation of R.I. Gen. Laws § 9-1.1-3(a)(3).

318.    Due to Defendants' conduct, the State of Rhode Island has suffered substantial monetary damages.

319.    The State of Rhode Island is entitled to treble damages based upon the amount of damage sustained by the State of Rhode Island as a result of the aforementioned violations of the R.I. Gen. Laws § 9-1.1-3(a), an amount that will be proven at trial.

320.    The State of Rhode Island is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by R.I. Gen. Laws § 9-1.1-3(a) for each of the fraudulent claims.

321.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to R.I. Gen. Laws § 9-1.1-4(d).

## COUNT XX
**Violation of Tennessee Code Annotated § 71-5-182 – Tennessee Medicaid False Claims Act**

322.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

323.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and Tennessee-based Kingsport Primary Care, P.C.; Mid State Health Associates, Inc.; Prime Medical Group, P.C.; Lunceford Family Health Center, P.C.; Memphis Primary Care Specialists, LLC; Good Health Associates, PLLC; Hamilton Pediatrics and Tennessee- based John Doe Medical Practices ("Tennessee-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Tennessee Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(A).

324.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Tennessee-based Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(B).

325.    As set forth above, Tennessee-based Medical Practices with Defendants

UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, by and through their agents, officers and employees, conspired to commit a violation of the Tennessee Medicaid False Claims Act, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(C).

326.    Due to Defendants' conduct, the State of Tennessee has suffered substantial monetary damages.

327.    The State of Tennessee is entitled to treble damages based upon the amount of damage sustained by the State of Tennessee as a result of the aforementioned violations of the Tenn. Code Ann. § 71-5-182(a), an amount that will be proven at trial.

328.    The State of Tennessee is entitled to a civil penalty of not less than five thousand dollars ($5,000) and not more than twenty-five thousand dollars ($25,000) as required by Tenn. Code Ann. § 71-5-182(a) for each of the fraudulent claims.

329.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Tenn. Code Ann. § 71-5-183(d).

## COUNT XXI
### Violation of Texas Code § 36.002 – Texas Medicaid Fraud Prevention

330.    Relator hereby incorporates and realleges herein all other paragraphs as if

fully set forth herein.

331.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and Texas-based Rosemary A. Bates, M.D., P.A.; Pediatric Healthcare Associates, P.A.; Premier Wellness Internal Medicine, LLC; Manuel Griego, Jr., D.O., P.A.; Drs. Kaplan & Akins, P.A.; Rockwall Pediatrics; Steven G. Bander, D.O., P.A.; Larry K. Stubblefield, D.O.; Patient Focus Medical Practice, P.A.; Forest Lane Pediatrics, LLC; Khi Medical Solutions, Inc.; Salma Mazhar, M.D., P.A.; North Dallas Ent Group, P.A.; Les T. Sandknop, D.O., P.A.; Pediatric Associates of North Texas; McKinney Family Healthcare, LP; Frisco Urgent Care And Clinics; North Country Family Practice, P.A.; Huguley Medical Associates; Endocrinology Institute of Texas; Bill Burke, DO, P.A.; Cody L. Mihills, M.D., P.A.; Ear, Nose, & Throat Care, P.A.; Walter Leon, M.D., P.A.; Oak Cliff Family Healthcare, P.A.; Pediatrics of Dallas; Dunn & Chadwick Family Medicine; Alpha Medical Center; Harry Hernandez, D.O., P.A.; Toepperwein Family Practice, P.A.; Tanya R. Grun, M.D., P.A.; Carl Erickson, M.D., P.A.; Howard H. Galarneau Jr., D.O., P.A.; David A. Ramos, M.D., P.A.; Elms Creek Family & Urgent Care Clinic; Dan Freeland, DO, P.A.; San Antonio Internal Medicine Physicians, PLLC; Robert G. Bass, Jr., M.D., P.A.; Pleasanton Medical Center, LTD; Vital Life Wellness Center; Hormazd Sanjana,

M.D., P.A.; Joy Obokhare, MD; Mid County Medical Group, P.A.; Dekalb

Physicians Clinic, PLLC; Olie Garrison, MD; Ault Mcinnis, PLLC; Tyler Internal

Med Assn; Newton Family Clinic PA; Healthcare Express, LLP; Md2 Urgentcare

Clinic; Valley Medical Clinic, LLC; El Paso Pediatric Associates, PA; Westwind

Pediatric Clinic; Sun City Medical Practice, PA; Cancer Radiation & Specialty

Clinics Of El Paso, PA; The Doctors In; Carla J. Cole, D.O., P.A.; North Texas

Family Practice Assoc; Vital Family Practice Center; Offices of Family Medicine,

PLLC; David W. Carlson, M.D., P.A.; Village Medical Center; Karen K. King,

D.O.; Our Family Doctor, P.A.; Forest Medical Care, P.A.; Priority Health Center,

LLC; Mahmood B. Panjwani, M.D., P.A.; All Care Family & Urgent Care Clinics,

PA; Farida Valliani, Md, P.A.; Brehm Medical Center; Paul S. Worrell, D.O., P.A.;

Joyce M. Shotwell, M.D., P.A.; Medi Clinic; Mark Heaver, D.O., P.A.; Jeffrey D.

Rettig, D.O., P.A.; Martin G. Mcelya, D.O., P.A.; Rebecca D. Butler, M.D., PLLC;

Dallas Comprehensive Medical Care, PLLC; Julie L. Reihsen, M.D., P.A.; George

L. Eastman III, M.D., & Associates; Thompson Family Medicine; The Family

Doctors, P.A.; West Plano Pediatrics, P.A.; Doctors Of Internal Medicine, P.A.;

Plano Pediatrics, P.A.; Piga Primary Care Associates, LLC; Precision Family

Medicine, P.A.; Care United Medical Centers of America, LLP; J. Gregory

Mccray, D.O.; Akirkhan N. Daya, M.D., P.A.; Family Practice Associates, LLC;

Granbury Family Medclinic, P.A.; Patrick W. Hisel, M.D., P.A.; Dublin Family Medicine; Schmidt Medical Center, P.A.; S. Howard Dickey, D.O., P.A.; C. Brooks Smith, M.D. & Associates; Kare Family Clinic, P.A.; D. Blayne Laws, M.D., P.A.; Ellis County Medical Associates, P.A.; Burroughs Medical Clinic, P.A.; Emmanuel E. Sackey, M.D., P.A.; Wise Family Practice; Clinics Of North Texas, LLP; Radu Ciubuc, M.D., P.A.; Odessa Consultants, PLLC; El Paso Oncology and Internal Medicine, P.A.; Jorge Ortiz, M.D., P.A.; St. Jude International Cancer Associates; Primary Healthcare Physicians; Eastside Family Care Center; Physicians Healthcare Associates, LC; Shylesh Ganta, M.D., P.A.; Permian Women's Center, P.A.; Family Medicine & Skin Care Center; El Paso Integrated Physicians Group, P.A.; Re Medical Associates, PA; Complete Care Midland; Community Medical Clinic; Angelina Farella, M.D., P.A.; NW Cypress Pediatrics and Family Medicine, PLLC; SJMC Physician Services; Occupational and Family Medicine of South Texas; Avanta Health Professionals, PA; A Brighter Tomorrow Pediatrics; Deirdre McMullen, M.D., P.A.; Sugarland Med-Ped Clinic; JK Family Clinic; Pisharodi Surgicals, Inc; Oaks Family Practice Center, P.A.; L. Kin Szeto, MD, P.A.; 1960 Family Practice, P.A.; Clear Lake Family Physicians, PLLC; RGV Preventative Care Inc.;) Quantum Physicians, PA; Jacinto Medical Group, PA; Family Medical Care, P.A.; John M. Young M.D.,

106

P.A.; Manon E. Childers, III, M.D.; Amarillo Family Physicians Clinic, P.A.;

Sangtae Caleb Kim; Fletcher & O'Grady Pediatric Associates; Ricky A. Siewert,

DO; Total Care Health, PA; Panhandle Family Care, LLC; Samuel A. Hare, M.D.;

North Hills Family Medicine, PA; Internal Medicine Center Of Fort Worth;

Basanti Vrushab, M.D., PLLC; Texas Familicare Medical Group, PLLC; Durbin

Family Practice, P.A.; Old Town Medical Center; Bluffington Family Medicine,

PLLC; Healthcare Associates Of Irving, PLLC; Kathryn Pifer, D.O., P.A.;

Maxhealth Medical Associates, P.A.; Adam S. Miner, M.D., P.A.; Alamo Area

Family & Geriatric Medicine Associates; Alvear Family First, P.A.; Castle Hills

Family Practice; Central Texas Urgent Care, P.A.; Clinic Clark Medical Center;

Coppell Associates in Family Medicine, P.A.; Coppell Clinic, P.A.; Corpus Christi

Wellness Center; David A. Ray, D.O., P.A.; Jon W. Copeland, D.O., P.A.; Denise

M. Casper, D.O., P.A.; Diamond Hill Medical Center, P.A.; Doctors Clinic

Houston; Doctors Clinic Houston-NW Freeway; Doctors Clinic Houston-North

Freeway; Doctors Clinic Houston-Southwest Freeway; Doctors Clinic Houston-

Gulf Freeway; Doctors Clinic Houston-East Freeway; Francis M. Gumbel, M.D.,

P.A.; Dr. Mario R. Anzaldua, MD, PA; Wyatt Webb, MD, PA; Family & Senior

Medical Clinic P.A.; Family Medicine and Urgent Care; Family Medicine

Associates of Stephenville; Family Practice Clinic; Good Shepard Physician

107

Services, Inc.; Gustavo E. Villarreal, M.D., P.A.; Gwendolyn Allen MD PA; Jagannath LLC; Jay Chavda M.D., P.A.; Jennifer Gwozdz PA; John Garcia, M.D., PA; Jose PerezCassar MD PA; Kelsom Clinic, P.A.; Laredo Family Medicine, P.A.; Lawrence A. Alder, M.D., P.A.; Lone Star State Dermatology Clinic, PLLC; Medstream Wellness Medical Group LLC; Norberto Alvarez Jr. MD PA; North Central Texas Family Medicine, P.A.; OM Sakthi, P.A.; Pineloch Medical Clinic, P.A.; Primary and Diagnostic Medical Centers of Texas P.C.; Pulmonary Medicine & Wellness Center; Red Bird Community Health Center, LLC: Rockport Urgent Care Center, PLLC; Stephanie J. Morton, M.D., PLLC; Thomas D. Newell, PLLC; Adult Internal Medicine Sherman; Texas Health Physicians Group; Uptown Health and Wellness Center of Cedar Hill, LLC; Victory Medical & Family Care; Wee Tots Pediatrics, P.A. and Texas-based John Doe Medical Practices ("Texas-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly made or caused to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized, in violation of Tex. Code § 36.002(1).

332.    As set forth above, Defendants UAS, James Strader, America Strader,

Larry Smith, John Berberian, Nick Hollis, and Texas-based Medical Practices, individually and by and through their agents, officers, and employees, knowingly applied for and received a benefit or payment on behalf of another person under the Medicaid program and converted any part of the benefit or payment to a use other than for the benefit of the person on whose behalf it was received, in violation of Tex. Code § 36.002(3).

333.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Texas-based Medical Practices, by and through their agents, officers and employees, knowingly made, caused to be made, induced, or sought to induce the making of a false statement or misrepresentation of material fact concerning information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program, in violation of Tex. Code § 36.002(4)(B).

334.    As set forth above, Texas-based Medical Practices with Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, by and through their agents, officers and employees, conspired to commit a violation of the Texas Medicaid Fraud Prevention, in violation of Tex. Code § 36.002(9).

335.    As set forth above, Defendants UAS, James Strader, America Strader,

Larry Smith, John Berberian, Nick Hollis, and Texas-based Medical Practices, by and through their agents, officers and employees, knowingly engaged in conduct that constitutes a violation under Tex. Code § 32.039(b), in violation of Tex. Code § 32.002(13).

336.    Due to Defendants' conduct, the State of Texas has suffered substantial monetary damages.

337.    The State of Texas is entitled to treble damages based upon the amount of damage sustained by the State of Texas as a result of the aforementioned violations of the Tex. Code § 36.052(a)(1) and 36.052(a)(4), an amount that will be proven at trial.

338.    The State of Texas is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by Tex. Code § 36.052(a)(3)(B) for each of the fraudulent claims.

339.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Tex. Code § 36.110.

## COUNT XXII
### Violation of Virginia Code Annotated § 8.01-216.3 – Virginia Fraud Against Taxpayers Act

340.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

341.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Virginia-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Virginia Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Va. Code Ann. § 8.01-216.3(A)(1).

342.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Virginia-based John Doe Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Va. Code Ann. § 8.01-216.3(A)(2).

343.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Virginia-based John Doe Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Virginia Fraud Against Taxpayers Act, in violation of Va. Code Ann. § 8.01-216.3(A)(3).

344.   Due to Defendants' conduct, the State of Virginia has suffered substantial monetary damages.

345.   The State of Virginia is entitled to treble damages based upon the amount of damage sustained by the State of Virginia as a result of the aforementioned violations of the Va. Code Ann. § 8.01-216.3(A), an amount that will be proven at trial.

346.   The State of Virginia is entitled to a civil penalty of not less than five thousand fiv hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by Va. Code Ann. § 8.01-216.3(A) for each of the fraudulent claims.

347.   Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Va. Code Ann. § 8.01-216.7.

## COUNT XXIII
### Violation of Washington Revised Code § 74.66.020 – Washington State Medicaid Fraud False Claims Act

348.   Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

349.   As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, and Nick Hollis, and Washington-based Sound

Internal Medicine, Inc.; and Washington-based John Doe Medical Practices ("Washington-based Medical Practices"), individually and by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the Washington Medicaid program numerous false or fraudulent claims for payment or approval, in violation of Wash. Rev. Code § 74.66.020(1)(a).

350.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Washington-based Medical Practices, individually and by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Wash. Rev. Code § 74.66.020(1)(b).

351.    As set forth above, Defendants UAS, James Strader, America Strader, Larry Smith, John Berberian, Nick Hollis, and Washington-based Medical Practices, by and through their agents, officers and employees, conspired to commit a violation of the Washington State Medicaid Fraud False Claims Act, in violation of Wash. Rev. Code § 74.66.020(1)(c).

352.    Due to Defendants' conduct, the State of Washington has suffered substantial monetary damages.

353.    The State of Washington is entitled to treble damages based upon the

amount of damage sustained by the State of Washington as a result of the aforementioned violations of the Wash. Rev. Code § 74.66.020(1), an amount that will be proven at trial.

354.    The State of Washington is entitled to a civil penalty of not less than five thousand five hundred dollars ($5,500) and not more than eleven thousand dollars ($11,000) as required by Wash. Rev. Code § 74.66.020(1) for each of the fraudulent claims.

355.    Relator is also entitled to reasonable expenses which the court finds to have been necessarily incurred and reasonable attorney's fees and costs, pursuant to Wash. Rev. Code § 74.66.070.

## COUNT XXIV
### Violation of 31 U.S.C. § 3730 – Retaliation

356.    Relator Nix hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

357.    Defendant UAS violated Relator Nix's rights pursuant to 31 U.S.C. § 3730(h) by retaliating against Relator Nix for lawful acts done by Relator Nix in furtherance of other efforts to stop one or more violations alleged in this action.

358.    As a result of UAS's actions, Relator Nix has suffered damages in an amount to be shown at trial.

## COUNT XXV
114

**Violation of O.C.G.A. § 49-4-168.4 – Retaliation**

359.    Relator Nix hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

360.    Defendant UAS violated Relator Nix's rights pursuant to O.C.G.A. § 49-4-168.4 by retaliating against Relator Nix for lawful acts done by Relator Nix in furtherance of an action under this section, including investigating matters that could reasonably lead to the filing of such an action.

361.    As a result of UAS's actions, Relator Nix has suffered damages in an amount to be shown at trial.

## COUNT XXVI
**Breach of Contract**

362.    In addition to her base compensation, Relator's employment agreement included quarterly variable compensation in the amount of or greater than $10,000 per quarter.

363.    Defendant UAS failed to pay Relator these quarterly bonuses for the third and fourth quarters of 2013 or the first quarter of 2014.

364.    COO Lynn Robinson regularly assured Relator that UAS was aware that Relator was owed these quarterly bonuses, but that the payments were simply delayed and would ultimately be paid to Relator.

365.    Defendant UAS owes Relator in excess of $30,000 in unpaid quarterly

115

bonuses.

366.    As a result of UAS's actions, Relator Nix has suffered damages in an amount to be shown at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Relator Terri Nix prays for judgment:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a civil penalty of $11,000 for each of the false claims and statements;

(c) awarding the State of Georgia treble damages sustained by it for each of the false claims;

(d) awarding the State of Georgia a civil penalty of $11,000 for each of the false claims;

(e) awarding Relators 30% of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(f) awarding Relator special damages resulting from the retaliation pursuant to 31U.S.C. § 3730(h) and O.C.G.A. § 49-4-168.4;

(g) awarding Relator damages resulting from the breach of contract by UAS, including unpaid compensation;

(h) awarding Relator her litigation costs and reasonable attorney's fees; and

(i) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

Julie K. Bracker
Georgia Bar No. 073803
Jason Marcus
Georgia Bar No. 949698
**BRACKER & MARCUS LLC**
3225 Shallowford Road
Suite 1120
Marietta, GA 30062
Tel. (770) 988-5035
Fax (678) 648-5544
Julie@FCAcounsel.com
Jason@FCAcounsel.com

Kevin G. Bennett, Esq. (*pro hac vice*)
Florida Bar No. 977098
**Bennett Law Firm, LLC**
80 NE 4th Ave. Ste. 18
Delray Beach, Florida 33483
Ph: 561-276-9343
Fax: 561-276-9320
kbennett@thebennettlawfirmllc.com

117

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been filed electronically on CM/ECF, which sent notification of the filing to all counsel of record on this 27th day of April, 2017.

/s/Sheri Lang_____
Sheri Lang