# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *ex rel.* **NIX** § § §<br>Plaintiffs, §<br> §<br>vs. §<br> §<br>**UNITED BIOLOGICS, LLC, d/b/a** §<br>**UNITED ALLERGY SERVICES, et al.,** §<br> §<br>Defendant(s). §<br>_____ § | **CIVIL ACTION NO:**<br>**1:14-cv-1486-LMM** |

## UNITED BIOLOGICS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO RULE 11(C)

13992589v1

**TO THE HONORABLE JUDGE MAY:**

Defendant United Allergy Services ("UAS") moves for sanctions against Relator Terri Nix ("Nix") and her counsel pursuant to Fed. R. Civ. P. 11(c). Nix and her counsel have named 468 doctors and clinics in this *qui tam* suit under the False Claims Act ("FCA"), all with the purpose of harassing the doctors, clinics, and UAS based on their customer relationship and without evidentiary support for the factual contentions contained in the allegations made in their pleading. In support of this motion, UAS respectfully states as follows:

## FACTUAL BACKGROUND

Nix, a former UAS employee, brought this *qui tam* action on May 16, 2014, three months after she was terminated from UAS for performance reasons. In her original complaint, Nix alleged that UAS, a Texas-based company that contracts with medical service providers to provide allergy testing and other services, had violated the FCA. Nix also alleged that she was terminated because she supposedly brought the violations to UAS's attention, and advanced individual claims under the FCA and other statutes against UAS and hundreds of others.  Dkt. No. 1 ¶¶ 107, 110-17, 289-94.

### 1. The Binding Arbitration Demonstrates Nix's Absence of Knowledge

Ultimately, Nix was compelled to arbitrate her individual claims against UAS, which she lost in front of the arbitrator, the Honorable Catherine Stone. Judge Stone found that Nix had not only failed to prove that she was whistleblowing, but also that she illegally took with her and/or kept UAS's confidential and proprietary information in violation of her Non-Disclosure Agreement. *See* **Ex. A** (Final Arbitration Award) at p. 4 (finding that Nix downloaded a "remarkable" volume of UAS data, much of which "contain[ed] confidential client and patient information," presented "no credible evidence [that she did so] with the intention of initiating" a FCA suit against UAS, and thus her "conduct is not protected and is a breach" of her agreements with UAS). Judge Stone ordered Nix and those acting in concert with her to return the stolen material. *Id.* at p. 7.

Meanwhile, during the arbitration, Nix admitted that she had no evidentiary basis to assert claims against the physicians and clinics she had named in this *qui tam*, as she did not even know if they ever submitted claims to the Government:

> Q. Ms. Nix, you are also aware -- well, going back to this qui tam complaint with the list of the 400-plus doctors that you filed. You're aware that a number of the doctors and clinics listed do not even bill the Medicare and Medicaid; correct?
>
> A.· Mr. Low made me aware of that, yes.

Q.· You were not aware of that at the time you decided to sue them?

A.· I -- I did not prepare that document; my legal counsel prepared that –

\*\*\*

Q.· Understood.  But at the time -- but you were suing on behalf of the government in this document; correct?

A.· I understand that.

Q.· At the time you decided to sue all these people, don't you think it would have been worthwhile to determine whether, in fact, they submitted any government claims such that they would fall within the False Claims Act?
\*\*\*
A.· Again, my legal counsel put in that document. I -- when I saw that document, I -- I believed it to be accurate.· So I wouldn't -- I wouldn't know to ask those questions.· I just assumed that -- that those were accurate –

Q.· Okay.

A.· -- that was accurate information.

\*\*\*

Q.· Do you think it would have been important to determine whether, perhaps, in fact, some of the people identified as defendants in your qui tam complaint were even alive at the time you filed the complaint?

A.· Again, Aaron, I relied on my counsel to put together that document. And I've never been through this before, so I didn't know to ask those specific questions.

**Ex. B-1** (Arbitration Transcript) at 240:7-242:10.

It thus appears from the evidence that Nix gave everything she unlawfully took from UAS to her attorneys, and her attorneys then named every UAS customer listed on a misappropriated UAS customer list in this action. To this day, neither Nix nor her attorneys have been able to explain to UAS or its counsel why they thought it proper to sue nearly 500 doctors about which they knew nothing other than that they provided needed allergy services to their patients.

### 2. Nix's Counsel Publicly Admitted the Improper Motive

Ironically, at the same time that Nix was testifying in arbitration, her counsel was telling other attorneys precisely why they had decided to sue those hundreds of individual clinic and physician defendants. Patrick O'Connell, who represents Nix in this case, as well as the relators in the previously-dismissed Texas case, presented at a Continuing Legal Education Seminar in Texas on November 30, 2018. During his presentation, O'Connell discussed "an arbitration going on right now today" that his "friend Austin Kaplan" was handling for him based on a case he dismissed "because there was a second filed case in Atlanta." **Ex. C-1** (FCA CLE Transcript) at 34; *see also* **Ex. A** (Final Arbitration Award) at 1 (noting that Mr. Kaplan represented Nix at the arbitration). Mr. O'Connell had an exchange with a co-presenter who talked about threatening to name individual physicians and "using

that as potential set up a[s] leverage etc." against the named defendant. **Ex. C-1** at 35.

Mr. O'Connell then explained: "[t]he case that the arbitration is going on in today, we've got a company that we think paid kickbacks to hundreds upon hundreds of general practitioners. We've named the doctors and that's an issue because my experience, at least with the federal government, is they don't like that very much." *Id.* at 36. After discussing the challenges of naming so many defendants, O'Connell explained that "we made the decision that we're going to go forward on it and see how many people will be reasonable or not." *Id.* And after a discussion with the co-presenter of using the threat of service as a way to manipulate the defendants to "flip" or "collect," O'Connell explained that because his "case is declined … it doesn't have to be much but they need to put a little something." *Id.* at 36.

### 3. Nix and Her Counsel Still Persist in Harassing Doctors at UAS's Expense

Since both Ms. Nix's admissions at arbitration and Mr. O'Connell's public disclosure of their intent to harass UAS's customers for money, UAS and its counsel have repeatedly taken the position that the physicians have been named for an improper purpose of harassment, in order to put pressure on UAS to resolve the case in favor of Nix. Nevertheless, Nix and her counsel have continued to move forward,

filing a Third Amended Complaint on July 9, 2019, bringing the count up to 468 physician or clinic defendants without any individual reference to nearly any of them. Dkt. 163. In fact, Nix and her counsel are aware that this Court lacks jurisdiction over most of these physicians, who have no connection whatsoever to this forum.[1] Undersigned counsel has met and conferred with Nix's counsel on these issues and requested that this entire case, or alternatively, at least the hundreds of individual physician and clinic defendants, be dismissed. Because even after

---

[1] Rule 11 does not address the issue of who may move for sanctions. However, the Advisory Committee Notes accompanying the 1983 amendments to Rule 11 require that "[a] party seeking sanctions should give notice to the court and the offending party" and make explicit the court's authority to impose sanctions on its own motion "in order to overcome the traditional reluctance of courts to intervene unless requested by one of the parties." Fed. R. Civ. P. 11 (citing Notes of Advisory Committee on Rules—1983 Amendment (emphasis added)). Thus, as a party to this case, UAS has standing to bring this Motion for Sanctions as it has been forced to incur additional costs and attorney fees from having to defend a suit much larger than would otherwise necessary given the additional, improper parties. Moreover, Nix and her counsel are aware that many of these soon-to-be served defendants may terminate the relationship with or seek indemnification from UAS, which would force UAS to incur additional time and expense in defending this action. *See Nyer v. Winterthur Int'l*, 290 F.3d 456, 459 (1st Cir. 2002) (finding that even non-party "would-be defendants had standing" because "the filing of the complaint . . . caused the defendants to incur costs and attorney fees . . . Moreover, the filing of the complaint necessarily triggered the expenditure of court resources."); *see also Greenberg v. Sala*, 822 F.2d 882 (9th Cir. 1987).

receiving service of this motion more than 21 days ago, Nix refuses to dismiss either this case or these physicians and clinics, UAS is forced to file this motion.

## STANDARD OF REVIEW

Rule 11 provides that "[b]y presenting to the court a pleading . . . whether by signing, filing, submitting or later advocating it – an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:  (1) it is not being presented for any improper purpose, such as to harass . . . or needlessly increase the cost of litigation; . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P (11)(b)(1) & (3).

Sanctions, including dismissal and a potential monetary penalty, are appropriate for a party, attorney, or law firm that violates this rule. Fed. R. Civ. P. 11(c); *Williams v. Clayton Cty.*, No. 1:05-CV-0688-CAM, 2006 WL 8432259, at *2 (N.D. Ga. Aug. 11, 2006) (dismissing claims for failure to comply with Rule 11 and collecting cases). Additionally, Rule 11 expressly provides for an award of some or all of the reasonable attorney's fees incurred as a direct result of the Rule 11 violation. *Id.*; Fed. R. Civ. P. 11(c)(2). Sanctions under Rule 11 do not require a finding of bad faith. *Williams*, 2006 WL 8432259, at *2.

## ARGUMENT

In Nix's Third Amended Complaint (Dkt. No. 163), Nix's attorney, Jason Marcus of Bracker & Marcus LLC, signed and filed a pleading with this Court that names 468 providers and clinics for no other reason than they appeared on a customer list Nix took from UAS. Since that time, Nix's other attorneys in Texas, including Patrick O'Connell and Catherine Kyle, have joined in that pleading after filing applications to appear *pro hac vice* in this Court.  But in continuing to name these defendants more than five years after bringing this suit initially, and now threatening to finally serve them, Nix and her attorneys assert the following facts without any basis and for which they have not conducted an adequate investigation:

- every named provider-defendant has billed a government insurer, i.e., Medicare, Medicaid, Tricare, or Champus (e.g., Dkt. No. 163 ¶¶ 63, 109, 180-82);

- every provider-defendant knowingly presented false claims to government insurers (e.g., *id.* ¶¶ 180-82, 188-89); and

- every provider-defendant lacks sufficient training to provide the pertinent medical services and order medically unnecessary services (e.g., *id.* ¶¶ 97-98, 109, 127).

Simply put, the foregoing statements are patently false, do not have evidentiary support, and were not formed after a reasonable inquiry under the circumstances. Instead, Nix and her counsel brought these claims against the parties in order to put pressure on UAS to resolve this case.

### 1. Nix and Her Attorneys Do Not Have an Appropriate Evidentiary Foundation to Sue

Nix and her attorneys failed to conduct a reasonable investigation into whether a sufficient factual basis existed to sue the individual physician and clinic defendants in this case. The Eleventh Circuit has described that a district court should undertake an analysis to determine if an attorney conducted a reasonable investigation in the factual basis of claims, as required by Rule 11(b). *Thompson v. RelationServe Media, Inc.*, 610 F. 3d 628, 665 (11th Cir. 2010). First, the court must determine whether the factual or legal contentions are frivolous. "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only 'patently frivolous' evidence is offered to support factual contentions, sanctions must be imposed." *Id.* The *Thompson* court went on to clarify that:

> Once a court concludes that either the factual or legal contentions are frivolous, the question becomes whether the attorney should have known they were frivolous. We ask what was known or reasonably knowable when the paper was "present[ed] to the court." Fed. R. Civ.

> P. 11(b). Again, measured objectively, if a reasonable investigation would have revealed the error to a reasonably competent attorney, then sanctions can be imposed; if not, then sanctions cannot be imposed. The reasonableness of the inquiry turns on the totality of the circumstances, including, for example, the time available for investigation and whether the attorney had to rely on the client, another member of the bar, or others.

*Id.*

Nix and her counsel lack appropriate evidentiary foundation to support their pleadings for at least three distinct reasons. First, Nix's statements that every provider-defendant has billed a government insurer are false and made without supporting evidence or reasonable investigation because many of the named provider-defendants only accept private insurance and have not billed the government. Nix previously admitted that she and her counsel failed to sufficiently investigate these statements. Nix testified that the list of individual provider-defendants named in this case came from a customer list she took from UAS. *See* **Ex. B-1** (Arbitration Transcript) at 205-6, 240-43; Dep. of T. Nix, **Ex. B-2** (Dep. of T. Nix) at 119-29. Nix further testified that she was unaware of whether these providers, who she now charges with fraud, actually ever billed the government. *Id.* Nix merely provided the stolen customer list to her counsel, who in turn named said UAS customers as defendants.

Second, despite naming most of these defendants more than five years ago, Nix's counsel has not made any attempt to properly investigate her claims as to these defendants, despite Nix's admissions in arbitration. *Id.* A search of publicly available CMS databases demonstrates that many of these clinics have not presented allergy claims that could be considered a false claim. Indeed, a short search confirms that clinics chosen at random did not submit claims for allergy services. **Ex. C**. Indiscriminately suing people without doing the legwork to ensure they could even be liable amounts to making demonstrably false statements lacking evidentiary support and failing to reasonably investigate their statements prior to filing suit. *See Franklin v. Pinnacle Entm't, Inc.*, 289 F.R.D. 278, 286-89 (E.D. Mo. 2012) (granting motion for sanctions against plaintiffs' attorney for failing to conduct reasonable investigation into factual basis of claim by including as plaintiffs the names of individuals who never worked for defendant).

Third, Nix makes similarly unfounded claims by asserting that every single physician and clinic sued does not have adequate training to perform allergy testing and knowingly orders unnecessary treatment. But Nix does not even know these people, and her attorneys named them on the assumption that doctors by default routinely do the wrong thing. And the theory that the doctors must be unqualified because they are not allergists has been directly dismissed by the United States

Department of Health and Human Services, which found that primary care physicians practicing allergy testing and immunotherapy is expressly permitted by the law. *See* **Ex. B-3** (DHHS Rules and Regulations Regarding Self-Administration of Antigens, Health Care Financing Administration, 54 FR 4023-01 (01/27/1989), II.B.4). And the relators in Nix's Texas suit along with their attorneys should also know this, because when they made complaints to the medical board about these same doctors, they lost that battle. *See, e.g.*, **Ex. B-4** (Texas Medical Board determination) (finding that UAS-contracting provider Dr. Bernice Gonzalez does not practice outside the scope of her license because she is a family physician). Thus, Nix's allegations that non-board-certified allergists lack adequate training is simply not applicable to the more than 400 physicians she sued here, and neither she nor her attorneys have any sound basis otherwise.

### 2. Nix and Her Attorneys Have Named Physicians to Harass UAS and its Customers in Violation of the Arbitrator's Ruling

Nix and her attorneys have seized an opportunity to shake down physicians and UAS for money regardless of the consequences. One need only look to the Original Complaint to demonstrate neither Nix nor her counsel know anything about these doctors or their clinics that are named as defendants—they just know they are on a customer list that Nix stole from UAS. Indeed, Judge Stone expressly found

that (1) "on the day of her termination, and possibly on one other occasion, Nix downloaded materials from UAS[]"; (2) Nix then "provided this information to her attorneys several months later"; (3) Nix's counsel then filed this lawsuit raising allegations "similar to" that made in the previously filed Texas case; and (4) Nix's conduct violated her Non-Disclosure Agreement with UAS because Nix stole these documents with no intention of initiating a FCA suit against UAS. **Ex. A** (Final Arbitration Award) at pp. 2, 4. The arbitrator also found that Nix's claim, that UAS retaliated against her, one that was also echoed in her Original Complaint here, was baseless as "there is no evidence that Nix voiced any concerns that UAS was engaged in fraudulent conduct" prior to her termination. *Id.* at 5-6. The arbitrator then enjoined both Nix and her counsel from using this stolen material, yet they still flaunt that legal ruling by using it to wrongly prosecute hundreds of clinics in this case. *Id.* at p. 7.

    The true reasons Nix and her counsel have kept these clinics in this case are two-fold. First, Nix's attorneys know that threatening service of a lawsuit on all of UAS's current and former customers – who will undoubtedly be concerned they were named for merely doing business with UAS – is leverage they can use in negotiations to try to make UAS pay to dispose of a frivolous suit before such service. Second, Nix's attorneys know that, at worst, they can offer that the other

defendants pay a small, nuisance sum to be dropped from the suit even though there is not merit to the claims filed. In either event, this is not the proper practice of law under Rule 11—it is harassment for pure monetary gain and should not be rewarded.

### 3. The Court Should Strike Nix's Pleading and Award Fees

As a result of Nix's attorney making, standing by, and advocating facts and positions known to be wrong and made without a reasonable investigation, UAS has incurred reasonable and necessary attorneys' fees in bringing this motion. Should Nix be allowed to go forward with this case and with serving process on the individual provider-defendants, who may in turn seek assistance from UAS, UAS will incur additional reasonable and necessary attorneys' fees in contesting this suit and moving for dismissal. None of these fees should have to have been incurred, but for the violation of Rule 11 by Nix's counsel. UAS therefore requests that the Third Amended Complaint be stricken either in its entirety or as to the 468 provider defendants and for an award of attorney's fees.

WHEREFORE, UAS respectfully moves the Court to grant the following relief:

1. Find Nix's counsel in violation of Rule 11;
2. Award UAS judgment against Nix's counsel Jason Marcus, Julie Bracker, Bracker & Marcus LLC, Kevin G. Bennett, the Bennett Law Firm LLC,

13992589v1

Patrick O'Connell, James Haley, the Law Offices of Patrick J. O'Connell, PLLC, Catherine Kyle, and Chamberlain McHaney, LLP, jointly, for UAS's reasonable and necessary attorneys' fees in bringing this motion;

3. Award UAS judgment for post judgment interest on all amounts awarded pursuant to No. 2;

4. Dismiss this case, or alternatively, dismiss the individual and clinic provider-defendants; and

5. For such other and further relief, at law or in equity, to which UAS may be entitled.

Respectfully submitted this 6th day of September, 2019.

Respectfully submitted,

ARNALL GOLDEN GREGORY LLP

*/s/ Aaron M. Danzig*

Aaron M. Danzig
aaron.danzig@agg.com
Georgia Bar No. 205151
Kara Silverman
kara.silverman@agg.com
Georgia Bar No. 679841
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363
Telephone: (404) 873-8500
Facsimile: (404) 873-8501

PILLSBURY WINTHROP SHAW PITTMAN LLP

Casey Low
Casey.low@pillsburylaw.com
Texas Bar No. 24041363
Dillon Ferguson
dillon.ferguson@pillsburylaw.com
Texas Bar No. 06911700
Elizabeth Kozlow Marcum
liz.marcum@pillsburylaw.com
Texas Bar No. 24078801
401 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone:  (512) 580-9616
Facsimile:  (512) 580-9601

*Admitted Pro Hac Vice*


ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the forgoing has been prepared with on the font and point selections (Times New Roman; 14 point) approved by this Court in Local Rule 5.1C.

This 6th day of September, 2019.

>              */s/ Aaron M. Danzig*_____
>              Aaron M. Danzig
>              ARNALL GOLDEN GREGORY LLP
>              171 17th Street, NW
>              Suite 2100
>              Atlanta, Georgia 30363
>              Telephone: (404) 873-8500
>              Facsimile: (404) 873-8501

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2019, I electronically filed United Biologic's Memorandum in Support of its Motions for Sanctions Pursuant to Rule 11(c) with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

                                    */s/ Aaron M. Danzig*_____
                                    Aaron M. Danzig
                                    ARNALL GOLDEN GREGORY LLP
                                    171 17th Street, NW
                                    Suite 2100
                                    Atlanta, Georgia 30363
                                    Telephone: (404) 873-8500
                                    Facsimile: (404) 873-8501

13992589v1